701 A.2d 702

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DOMINICK J. LOCURTO, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 17, 1997—Decided October 1, 1997.

Before Judges SHEBELL and A.A. RODRIGUEZ.

*Lynch & Teitelbaum*, attorneys for appellant (*Howard S. Teitelbaum*, of counsel; *Antonio J. Toto*, on the brief).

*Robert W. Gluck,* Middlesex County Prosecutor, attorney for respondent *(Simon Louis Rosenbach,* Assistant Prosecutor, of counsel, and on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This is an appeal by defendant, Dominick J. Locurto, from the affirmance by the Law Division of the Old Bridge Township Municipal Court's denial of his motion to suppress.[1] As a result of the denial, defendant stands convicted of driving while under the influence *(N.J.S.A.* 39:4–50). We reverse the denial.

In the early morning hours of December 8, 1995, defendant was stopped by a police officer employed by the East Brunswick Township Police Department, at a point where defendant travelling west on Old Matawan Road had left East Brunswick and entered the Township of Old Bridge. According to the officer, he was on special roving D.W.I. patrol when, at approximately 1:40 a.m., while driving east on Main Street in East Brunswick at a rate of 35 miles per hour, he observed defendant's 1988 Toyota pick-up truck travelling in the opposite direction on Main Street "at a high rate of speed."

The officer testified to making a u-turn and pursuing defendant for approximately 150 yards (450 feet) on Main Street at which point defendant turned left onto Emerson Street and travelled another 200 yards (600 feet) before turning left onto Old Matawan Road. The officer said he lost sight of defendant's vehicle after it turned left onto Emerson Street for a distance of "[m]aybe 200 yards—."

Nonetheless, the officer quickly caught up to and stopped defendant just short of the intersection of Route # 516 and Old Matawan Road. The officer was unable to state what speed he

[1] The Notice of Appeal filed in the Law Division and this court purports to seek review of defendant's convictions, however, only the denial of suppression issue has been raised.

attained in pursuing defendant nor did he estimate the speed defendant was travelling while under his observation. On cross-examination, the officer was asked, "How far in total did you follow him?" He responded approximately 100 yards on Main Street; maybe 200 yards on Emerson, and approximately a quarter mile (440 yards) on Old Matawan Road. Although the officer issued a careless driving summons, his testimony was unequivocal that there was no other traffic on the road and that there was no indication of improper driving other than the alleged excessive rate of speed.

Defendant testified that as he travelled on Main Street, he did not exceed the 35 miles per hour speed limit. He said he did not observe any police car as he proceeded on that street, and that he first became aware of the officer when he saw the flashing lights of the patrol car behind him on Old Matawan Road, at which time his speed was 35 miles per hour. He pointed out that he did not receive a speeding ticket, and it was only after he was ticketed for driving under the influence that he received a summons for careless driving. He also pointed out that none of the sections on the summons which would indicate the miles per hour in "excess of speed limit" were marked.

Defendant's argument in the Municipal Court, the Law Division, and before this court is that there was no articulable and reasonable suspicion as would justify stopping his vehicle. He infers that the testimony concerning his travelling at a high rate of speed and the issuance of the careless driving summons were merely subterfuges for the random stop of his lone vehicle on the roadway in the early morning hours in light of the D.W.I. Officer's "predisposition to look for people who may be driving drunk[.]"

This appeal affords the court an opportunity to emphasize the importance of the right to *de novo* review by the Law Division on appeals from the Municipal Court. *R.* 3:23–8; *see State v. Johnson,* 42 *N.J.* 146, 157, 199 *A.*2d 809 (1964) (stating that the function of *de novo* review is to determine case completely anew on the Municipal Court record, giving due, although not necessarily

controlling regard, to the Municipal Court judge's assessment of credibility of witnesses). That right would indeed be hollow and justice ill-served in the absence of a critical evaluation of the Municipal Court record and the absence of required factual findings.

It is every citizen's constitutional right while properly operating an automobile to be free from police interception. Only where there is an articulable and reasonable suspicion of impropriety or such other extraordinary circumstance as would reasonably justify a stop will it be permitted. *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979). Police interference with a citizen's liberty, when challenged, requires the State to prove the existence of an articulable and reasonable justification for the stop. *Prouse, supra,* 440 *U.S.* at 653, 99 *S.Ct.* at 1395–96, 59 *L.Ed.*2d at 667.

Although the record is unclear, apparently the issue of defendant's guilt concerning his conviction for driving while under the influence was raised before the Municipal Court judge on stipulated facts without entry of a guilty plea. In effect, however, the Municipal Court judge assumed defendant's guilt and preserved as the only issue for appeal the validity of the ruling on the motion to suppress. The procedural posture of the case was not clarified on appeal to the Law Division, and no express finding of defendant's guilt was placed on the record there. In any event, the parties do not dispute that the only issue before the Law Division and this court is whether the officer had an articulable and reasonable suspicion that defendant was operating his automobile in violation of the speeding laws.

Although the Municipal Court judge made no factual findings, he clearly rejected defendant's assertion that an officer's testimony that a vehicle is travelling at a "high rate of speed" is too "vague, speculative, and arbitrary" to provide a reasonable and articulable suspicion that defendant was violating the law. The judge stated:

I am satisfied that the officer had reasonable, articulable rationale that the Locurto vehicle was speeding, and therefore forming a traffic hazard for other traffic, even if ultimately the officer were to be proved wrong, and because he had the rationale for making the traffic stop, I believe he stopped the correct vehicle.

We agree entirely with that rationale, since viewing it as a statement of law, it is impeccable. Nonetheless, our review of the present record satisfies us that defendant's motion to suppress must be granted, because the State did not carry its burden of proving that there was a reasonable basis for the stopping of defendant's vehicle.

Judicial review in motions such as this must consist of a critical analysis of the testimony of the State's witnesses. A defendant's "day in court" carries with it the right to an independent judicial evaluation of the testimony of all witnesses, which we find woefully lacking in this case to the present time. Not only were the required scrutiny and factual findings absent in the Municipal Court proceedings, but also on the trial *de novo* to the Law Division, the judge made no findings. He declared only that he would "accede to" "the credibility findings of" the Municipal Court judge, which we find non-existent. The judge concluded that the officer's testimony rose to the level of an articulable rationale for the stop, stating "[a]nd that's where this decision ends."

We would expect at a minimum that the defendant and any reviewing courts would be advised on the record why the version recounted by the State's witness is accepted over the testimony of the defendant, when so clear a factual dispute exists. Otherwise, would not everyone surmise that the rationale behind the decision was that the State's witness was a police officer while the defendant was merely an ordinary person defending himself against allegations of wrongdoing? Certainly, if the State bears the burden of proof and the defendant is presumed innocent until the substantive charges are proven beyond a reasonable doubt, such a test of credibility is impermissible on a motion to suppress. Even the appearance of such a test of credibility must be avoided if our system of justice is to be respected. Fundamental rights of citizens must be scrupulously protected in all of our courts.

We suspect that few people are able, with any degree of accuracy, to judge on a subjective basis alone, the credibility of a witness. As a result, critical analysis of the witness' interests, motive, and demeanor is important and examination of the objective reasonableness of the testimony is also highly probative. Moreover, the factfinder must not only make the necessary observations of all of the elements required for an assessment of credibility but also must articulate those findings in detail for the record. *See Curtis v. Finneran,* 83 *N.J.* 563, 569, 417 *A.*2d 15 (1980) (finding in a non-jury civil action, trial court's role of finding facts and stating conclusions of law is not satisfied with naked conclusions); *see also State v. Sisti,* 209 *N.J.Super.* 148, 151, 506 *A.*2d 1307 (App.Div.1986) (stating that Municipal Court judge's failure to make findings as to credibility of witnesses and as to proofs of guilt without breathalyzer is unfair to parties involved).

We conclude that the testimony in this case, when viewed objectively, is insufficient to sustain the State's burden of demonstrating that there was an articulable and reasonable suspicion that defendant was violating the motor vehicle laws at the time the police officer stopped him. For the following reasons, the testimony of the officer cannot withstand scrutiny. To justify the stop, the officer would have the courts believe that while travelling in the opposite direction, he observed the defendant's vehicle travelling at a high rate of speed. After defendant's vehicle had passed, the officer made a u-turn on Main Street at a point approximately 450 feet from Emerson Street. He lost sight of defendant's vehicle when it turned onto Emerson Street. The officer then travelled approximately 600 feet on Emerson Street and turned left onto Old Matawan Road. He estimated, on cross-examination, that after travelling approximately a quarter of a mile (1,320 feet) on Old Matawan Road, he stopped defendant's vehicle.

Thus, according to the officer, he was able, in a total distance of 2,370 feet, to turn his vehicle completely around, turn two corners at intersecting streets, and cause the defendant's vehicle to stop, despite defendant's high rate of speed. If the officer's vehicle

immediately began the pursuit at a constant rate of speed of 60 miles per hour at the point of his u-turn and maintained that speed for the entire pursuit, without taking into account the time it would take to accelerate coming out of the u-turn, to negotiate two right angle intersection turns thereafter, and to stop his vehicle upon apprehending defendant, the entire pursuit would have lasted about 27 seconds. This we calculate by dividing the 88.2 feet per second travelled by a vehicle moving 60 miles per hour, into the 2,370 feet estimated by the officer as being the distance from his u-turn to the point of the stop.

Therefore, if the pursuit had occurred on a 2,370 foot straightaway and defendant had a 600 foot head start as can be reasonably inferred from the officer's testimony that he lost sight of the vehicle for about 200 yards, mathematically the defendant could not have averaged more than 45 miles per hour for the officer to have caught up to him in that distance. We know, however, that when all of the officer's maneuvers are considered, that the officer could not have averaged 60 miles per hour in his pursuit of less than half a mile. Therefore, we must conclude, based on a reasonable review of the suppression hearing testimony, that it is more likely that the defendant's testimony that he did not exceed 35 miles per hour is credible if he was caught in so short a time and distance.

If in fact the officer did stop defendant so quickly, the officer himself should have realized that his initial impression that the vehicle was speeding, based on his "momentary observation," was actually in error. When we consider the additional circumstances that no summons was issued for speeding, that the officer was unable to testify as to any approximations of speed of defendant's vehicle during the time that he observed and pursued it, and that only after the D.W.I. summons was issued was a careless driving summons issued without facts to support it, we are convinced that a reasonable factfinder may only conclude that it is more likely that defendant's testimony is the more plausible explanation. The facts support defendant's claim that he was travelling the speed

limit of 35 miles per hour and his premise that he was pulled over by the roving D.W.I. patrol not because of improper driving, but because he was the only vehicle on the roadway at the time.

In the absence of credibility findings, even if the defendant's thesis is not fully adopted, an impartial view of the officer's testimony results in the determination that it lacks sufficient reliability to be accepted as a basis for satisfying the constitutional requirement that there be reasonable suspicion. Assuming the officer in good faith articulated that defendant's vehicle was travelling at a high rate of speed, the court is not required to accept such testimony as a reasonable conclusion, if it is not.

We deem it critical to the preservation of the constitutional rights of individuals and the integrity of our judicial system that our courts not appear as if they are rubber stamping testimony of law enforcement officers as a basis for intrusions and stops. No less than meaningful review of the testimony offered as a basis for the police action is required.

We, therefore, must reverse the denial of the motion to suppress and order the Law Division to enter an order granting the motion and setting aside defendant's motor vehicle conviction. *See State v. Sparks*, 261 *N.J.Super.* 458, 461–62, 619 *A.*2d 257 (App.Div.1993) (holding that if evidence excluded on *de novo* review is necessary to sustain defendant's guilt, defendant must be acquitted, and case should not be remanded for a new trial to give State another opportunity to introduce excluded evidence).

Reversed and remanded.