724 A.2d 234

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. DOMINICK J. LOCURTO, DEFENDANT–
RESPONDENT.

Argued October 14, 1998—Decided March 2, 1999.

464

*Glenn Berman,* Middlesex County Prosecutor, argued the cause for appellant (*Mr. Berman,* attorney; *Simon Louis Rosenbach,* Assistant Prosecutor, of counsel and on the brief).

*Howard S. Teitelbaum,* argued the cause for respondent (*Lynch, Teitelbaum & Geldhauser,* attorneys).

*John F. O'Hern,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a conviction for driving while intoxicated (DWI). Both the East Brunswick Township Municipal Court and the Law Division found the testimony of the arresting police officer to be more credible than the testimony of defendant. The Appellate Division in a published opinion reversed the conviction after rejecting the lower courts' credibility determinations. 304 *N.J.Super.* 514, 701 *A.*2d 702 (1997). The primary issue before us is whether the Appellate Division exceeded the scope of its appellate review. We granted the State's petition for certification, 152 *N.J.* 365, 704 *A.*2d 1300 (1998), and now reverse.

I

On December 8, 1996, at 1:40 a.m., East Brunswick Police Officer John Napoli was on a special roving DWI patrol. While driving eastbound on Main Street in East Brunswick, Officer Napoli observed defendant's 1988 Toyota pick-up truck proceeding westbound on Main Street at "a high rate of speed." The posted speed limit was thirty-five miles per hour.

Officer Napoli made a U-turn and followed defendant on Main Street for about 100 yards attempting to catch defendant's vehicle. Defendant made a left turn on Emerson Street, and then a left turn on Matawan Road, causing the officer to momentarily lose sight of defendant's vehicle. Defendant was eventually stopped by Officer Napoli in Old Bridge Township. Officer Napoli issued defendant a summons for driving while intoxicated, in violation of *N.J.S.A.* 39:4–50, careless driving, in violation of *N.J.S.A.* 39:4–97, and possession of a controlled dangerous substance in a motor vehicle, in violation of *N.J.S.A.* 39:4–49.1. Officer Napoli did not issue defendant a summons for operating his vehicle in violation of any speeding laws, ostensibly because the careless driving charge was based on the alleged speeding.

On February 29, 1996, the East Brunswick Township Municipal Court denied defendant's motion to suppress evidence, such as his sobriety test results, obtained as the result of the vehicular stop. That decision was based on sworn testimony from both Officer Napoli and defendant. The officer testified that defendant was driving at a high rate of speed in excess of the posted speed limit; defendant testified that he was driving at the posted thirty-five miles per hour speed limit. The Municipal Court found the testimony of the police officer more credible than that of defendant for several reasons. It found that the absence of other traffic on the road at the time of the offense enhanced the officer's ability to make careful observations of defendant's vehicle. The court also found credible the officer's testimony that the short interval of time in which he lost sight of defendant's vehicle when defendant made the two left turns did not affect his certainty that

the vehicle he stopped was the same one he initially observed speeding. The court also determined that the officer's observations of speeding provided him with a "reasonable, articulable rationale" for stopping defendant's vehicle, and thus, denied defendant's motion to suppress. Defendant was convicted on all the charges. For sentencing, the trial court merged the careless driving charge with the driving while intoxicated charge, suspended defendant's driver's license for two years, and imposed statutory penalties. The court granted defendant a conditional discharge on the drug conviction.

Defendant appealed to the Law Division where a trial *de novo* was conducted based on the record. The Law Division also denied defendant's suppression motion and found him guilty on all the charges. In arriving at its conclusions, the Law Division adopted the credibility findings made by the Municipal Court, stating:

The standard that applies in this case is whether or not Officer Napoli had an articulable reason, a reasonably articulable reason for stopping this vehicle.... Napoli concluded that ... based on his experience, which I believe he testified to be some ten years, that, in his opinion, the vehicle was traveling in excess of the speed limit, which he also testified was 35 miles per hour.

And he concluded that, based on his observations, after making the U-turn, he then continued to make observations of the vehicle. Granted, those observations were for a limited period of time. He did not pace the vehicle. He didn't have any type of radar apparatus. And he did not employ the use of any other electronic devices or assistance from other officers, in terms of determining what the speed of the vehicle was.

However, he had, in my mind, observed what he thought to be a violation of a motor vehicle ordinance or motor vehicle statute. And it was, on that basis, that he took actions that are set forth in his testimony, regarding the Lo[c]urto vehicle.

The Law Division also rejected defendant's contention that the officer's testimony that he was driving at a "high rate of speed" was insufficient to support a careless driving charge. The court found "the officer certainly could have issued a ticket for speeding, ... [but] instead ... chose to issue a careless driving ticket." In making that determination, the Law Division emphasized the following findings made by the Municipal Court:

The way the [c]ourt proceeded was to listen to the testimony of Officer Napoli. Then the [c]ourt concluded that, although there was no testimony regarding the effects on other traffic, which is a viable and salient argument, the [c]ourt

concluded that there was a potential danger, on the part of Mr. Lo[c]urto, based on what the [c]ourt found to be the credible testimony of Officer Napoli, regarding the speed with which the Lo[c]urto vehicle was traveling.

Now [the municipal court] found that, as to the effects on the other traffic issue, that the lack of other traffic actually in the [c]ourt's mind, enhanced the credibility of the officer. Because Officer Napoli could not have stopped the wrong vehicle.

On defendant's appeal, the Appellate Division observed that the only issue before it was whether the officer had an articulable and reasonable suspicion that defendant was operating his automobile in violation of the speeding laws. 304 *N.J.Super.* at 517, 701 *A.*2d 702. The panel determined that the Municipal Court "made no factual findings" but simply "rejected defendant's assertion that an officer's testimony that a vehicle is traveling at a 'high rate of speed' is too 'vague, speculative, and arbitrary' to provide a reasonable and articulable suspicion that defendant was violating the law." *Ibid.* The court also found that "on the trial *de novo* to the Law Division, the judge made no findings," but simply " 'accede[d] to' 'the credibility findings of' the Municipal Court judge, which we find non-existent." *Id.* at 518, 701 *A.*2d 702. The court conducted a *de novo* review of the record and concluded that "the State did not carry its burden of proving that there was a reasonable basis for the stopping of defendant's vehicle" and reversed the decisions of the lower courts. *Ibid.*

In the process of reversing the lower courts, the Appellate Division substituted its own detailed analysis of Officer Napoli's testimony and made detailed mathematical calculations, describing the timing, distance, and investigation of his suspicion that defendant was speeding and operating his vehicle while intoxicated. *Id.* at 519–21, 701 *A.*2d 702. Based on that analysis, the court concluded that "a reasonable factfinder may only conclude that it is more likely that defendant's testimony is the more plausible explanation." *Id.* at 520, 701 *A.*2d 702. Consequently, the Appellate Division reversed the denial of defendant's suppression motion, and ordered the Law Division to enter an order suppressing the evidence and vacating defendant's convictions.

II

-A-

The State, through the Middlesex County Prosecutor, argues that the Appellate Division exceeded the scope of its appellate review when it failed to give deference to the factual findings made by the Municipal Court and the Law Division. The State also argues that the Appellate Division erred when it concluded that the Municipal Court was obligated to articulate for the record "the necessary observations of all the elements required for an assessment of credibility." *Id.* at 519, 701 *A*.2d 702. The Attorney General, as *amicus curiae,* joins in the issues and arguments advanced by the prosecutor. In addition, the Attorney General maintains that if a trial court fails either to make required detailed factual findings or provide a statement of reasons for its determinations, the appropriate procedure dictates that the matter be remanded to complete the record.

Defendant agrees with the disposition made by the Appellate Division and asks the Court to affirm.

-B-

The framework for defendant's challenge to the validity of the officer's stop of his motor vehicle is relevant to the disposition of this appeal. Defendant's challenge was in the form of a suppression motion, asserting that his vehicle was illegally stopped. Motions to suppress evidence seized without a warrant, such as the results of sobriety tests in DWI cases, are heard in the municipal courts. *R.* 7:5-2(a). Orders denying suppression are reviewable on appeal from an ensuing judgment of conviction. *R.* 7:5-2(c)(2). The rule is silent, however, concerning the standard judges must follow in making their decisions on the motions. The rules that govern the conduct of non-jury trials help to inform our decision. *R.* 1:1-2.

■   In criminal and quasi-criminal cases tried without a jury, "the court shall make a general finding and shall, in addition, on request find the facts specially. The court shall thereupon direct the entry of the appropriate judgment." *R.* 1:7–4(a). That rule has been interpreted as requiring a trial court sitting without a jury to "state clearly its factual findings and correlate them with the relevant legal conclusions." *Curtis v. Finneran,* 83 *N.J.* 563, 570, 417 *A.*2d 15 (1980); *Rolnick v. Rolnick,* 290 *N.J.Super.* 35, 42, 674 *A.*2d 1006 (App.Div.1996).

■   "It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." *State v. Smith,* 306 *N.J.Super.* 370, 380, 703 *A.*2d 954 (App.Div.1997) (citing *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L. Ed.*2d 660, 673 (1979); *State v. Murphy,* 238 *N.J.Super.* 546, 554, 570 *A.*2d 451 (App.Div.1990)). To satisfy the articulable and reasonable suspicion standard, the State is not required to prove that the suspected motor-vehicle violation occurred. *State v. Williamson,* 138 *N.J.* 302, 304, 650 *A.*2d 348 (1994). The lower courts found that the State demonstrated that Officer Napoli possessed such a suspicion and denied defendant's motion to suppress evidence procured subsequent to the stop of his vehicle. Because the Appellate Division reversed that determination, the threshold issue before the Court is whether the Appellate Division properly reviewed the decision of the Law Division.

The seminal case in this State regarding appellate review of municipal court convictions is *State v. Johnson,* 42 *N.J.* 146, 199 *A.*2d 809 (1964). Observations made by the Court more than a quarter of a century ago establish that appellate review of those convictions is exceedingly narrow. The Court stated:

The contention that the trial court erred in its determination of the facts, whether underlying or ultimate, may be urged on appeal in any nonjury case, as the defendant did here in the Appellate Division. The appellate tribunal's obligation is the same—no greater and no less—in each type of such cases, recognizing, however, the legal differences in the required burden of proof .... It must review

the record in the light of the contention, but not initially from the point of view of how it would decide the matter if it were the court of first instance. It should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.

The aim of the review at the outset is rather to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record. This involves consideration of the proofs as a whole; the appraisal is not to be confined simply to those offered by the plaintiff, for the question is not simply whether there was enough evidence to withstand a defense motion at the end of the plaintiff's case or of the entire case. When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal. That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect.

But if the appellate tribunal is thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction, ... then, and only then, it should appraise the record as if it were deciding the matter at inception and make its own findings and conclusions. While this feeling of "wrongness" is difficult to define, because it involves the reaction of trained judges in the light of their judicial and human experience, it can well be said that that which must exist in the reviewing mind is a definite conviction that the judge went so wide of the mark, a mistake must have been made. This sense of "wrongness" can arise in numerous ways—from manifest lack of inherently credible evidence to support the finding, obvious overlooking or undervaluation of crucial evidence, a clearly unjust result, and many others. This, then, is when and how the permissive power of *R.R.* 1:5-4(b) should be utilized by the first appellate tribunal and is what our prior cases mean no matter how they have expressed it.

[*Id.* at 161–62, 199 *A.*2d 809 (internal citations omitted).]

*See also Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 475, 541 *A.*2d 1063 (1988) (holding a trial court's factual findings made pursuant to *Rule* 1:7–4(a) should not ordinarily be disturbed where "there is substantial evidence to support [its] implicit finding[s]").

Our study of the record in the present case convinces us that the trial courts carefully scrutinized the testimony and the record before making factual determinations. Therefore, it was improper for the Appellate Division to engage in an independent assessment of the evidence as if it were the court of first instance. The Municipal Court listened to the testimony of both witnesses

and concluded that the officer reasonably believed that defendant was speeding when he first observed defendant's vehicle. *N.J.R.E.* 701 permits lay persons, including police officers, to express their opinions in matters of common knowledge and observations if those opinions can assist the court in determining a fact in issue. *State v. Haskins,* 131 *N.J.* 643, 648–49, 622 *A.*2d 867 (1993); *State v. LaBrutto,* 114 *N.J.* 187, 197, 553 *A.*2d 335 (1989).

■ Although the reasons for the Municipal Court's determinations of the witnesses' relative credibility can be inferred from its decision, the court did not fully explain the reasons for its credibility findings. The fact that defendant was driving while intoxicated undoubtedly affected his ability to judge the speed of his vehicle. Intoxicated drivers generally do not recall with precision the exact speed they were driving when first observed by a police officer. A police officer, on the other hand, has been trained to estimate the speed of a moving vehicle. The Law Division acceded to the Municipal Court's credibility determinations since it had only a written transcript of the testimony of the witnesses. The Law Division's review of the Municipal Court's implicit credibility findings required it to "operate in the partial vacuum of the printed record, and ... the best and most accurate record [of oral testimony] is like a dehydrated peach; it has neither the substance nor the flavor of the peach before it was dried." *Trusky v. Ford Motor Co.,* 19 *N.J.Super.* 100, 104, 88 *A.*2d 235 (App.Div.1952). The Appellate Division was also obligated to operate in that same "vacuum" in that it was not permitted to "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence. [It was restricted to the test of] 'whether the findings made [by the trial court] could reasonably have been reached on sufficient credible evidence present in the record.'" *State v. Barone,* 147 *N.J.* 599, 615, 689 *A.*2d 132 (1997) (quoting *Johnson, supra,* 42 *N.J.* at 162, 199 *A.*2d 809).

■ The Appellate Division also improperly concluded that the lower courts erred in failing to articulate the basis for their credibility findings, concluding that the law requires "the factfin-

der [to] not only make necessary observations of ... credibility but also ... articulate those findings in detail for the record." 304 *N.J.Super.* at 519, 701 *A.*2d 702. The cases relied on by the Appellate Division do not support that conclusion.

The Court in *Curtis v. Finneran, supra,* 83 *N.J.* at 569–71, 417 *A.*2d 15, concluded that the trial court sitting without a jury in a wrongful death action erred in failing to set forth *factual findings* concerning the projected earnings of the decedent. The decision is silent regarding the standard a trial court must apply in making determinations of *witness credibility.* In *State v. Sisti,* 209 *N.J.Super.* 148, 506 *A.*2d 1307 (App.Div.1986), the Appellate Division affirmed the decision of the Law Division that found the defendant guilty of driving while intoxicated. The court in *Sisti* advised trial court judges in future DWI cases "where there are proofs of guilt, with and without breathalyzer readings," to "make findings and conclusions on both bases." *Id.* at 151, 506 *A.*2d 1307. The court's only mention of credibility assessments refutes, rather than supports, the Appellate Division's statement of the law. The court found that "although [the Law Division] did not have the benefit of the municipal court judge's findings as to the credibility of the witnesses," the Law Division "properly determined guilt on the alternative bases provided by *N.J.S.A.* 39:4–50," *ibid.,* by examining the record that contained sufficient evidence to support the defendant's conviction without any examination by the Law Division of witness credibility.

In *State v. Hodgson,* 44 *N.J.* 151, 163, 207 *A.*2d 542 (1965), *cert. denied,* 384 *U.S.* 1021, 86 *S.Ct.* 1929, 16 *L. Ed.*2d 1022 (1966), the Court found it unnecessary for a trial court to enunciate credibility findings when the record as a whole made the findings clear:

> In view of the trial judge's overall remarks in the record, there is no doubt that he believed the detective's denial and disbelieved the defendant and no purpose would be served by seeking a further expression from the trial judge on this score. The matter is strictly one of credibility and there is no reason for our now rejecting the testimony credited by the trial judge before whom it was given.

In the present case, unlike *Sisti,* both the Municipal Court and the Law Division made determinations concerning witness credi-

bility in finding Officer Napoli to be a more credible witness than defendant. Although the Municipal Court did not specifically articulate detailed findings of credibility in the record, the reasons supporting its determinations of the witnesses' relative credibility may be inferred from, and are well-supported by, the account of the facts and witnesses' testimony presented in its decision. For example, the Municipal Court stated that Officer Napoli had a fair amount of experience and that there was no other traffic on the road at the time of defendant's offense. In addition, the Municipal Court was aware at the close of the evidentiary hearing on the suppression motion that defendant was intoxicated while driving, a permitted consideration when evaluating a defendant's assertion that he was not speeding. All of those factors support the court's conclusion that the officer was a more credible witness than defendant.

Although the Law Division did not engage in its own credibility determinations separate and apart from the Municipal Court, it described on the record the evidence and testimony presented before the Municipal Court that persuaded it to "accede" to the Municipal Court's credibility determinations. Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record. *State v. Jamerson*, 153 *N.J.* 318, 341, 708 *A.*2d 1183 (1998); *Dolson v. Anastasia*, 55 *N.J.* 2, 7, 258 *A.*2d 706 (1969); *Johnson, supra*, 42 *N.J.* at 161, 199 *A.*2d 809. Moreover, the rule of deference is more compelling where, as in the present case, two lower courts have entered concurrent judgments on purely factual issues. Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error. *Midler v. Heinowitz*, 10 *N.J.* 123, 128–29, 89 *A.*2d 458 (1952).

Our review of the witnesses' testimony convinces us that the comments made on the record by the lower courts were sufficient

to support their conclusion that the officer was a more credible witness than defendant. To require judges in our municipal courts with extremely voluminous case loads to articulate detailed, subjective analyses of factors such as demeanor and appearance to support credibility determinations on each and every witness presented before them would unnecessarily tax a system that is already overburdened. Furthermore, the benefit to be gained from the detailed, subjective credibility articulations advocated by the Appellate Division would do little to add to the completeness of the records already required to be developed by lower courts under current standards.

The judgment of the Appellate Division is reversed; the judgment of the Law Division is reinstated.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices POLLOCK, GARIBALDI, STEIN and COLEMAN—5. S

*Opposed*—None.