**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3305-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AZMAR CARTER,

    Defendant-Appellant.

_____

Submitted December 20, 2017 — Decided June 27, 2018

Before Judges Fuentes and Koblitz.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-01-0165.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (LeeAnn Cunningham, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

    Pursuant to a negotiated agreement with the State, defendant Azmar Carter pled guilty to second degree unlawful

possession of a handgun while committing a drug-related offense, N.J.S.A. 2C:39-4.1(a). The court sentenced defendant to a term of five years imprisonment, with forty-two months of parole ineligibility as mandated by the Graves Act, N.J.S.A. 2C:43-6(c). Pursuant to Rule 3:5-7(d), defendant reserved his right to appeal the order of the Criminal Part denying his motion to suppress evidence. Based on the record developed before the motion judge, we affirm.

City of Orange Police Detective Gregory Johnson was the only witness to testify at the suppression hearing conducted on August 4, 2016. At all times relevant to this case, Johnson, Sergeant Stefanelli, Detective Mooney, and Detective Greenfield were assigned "to combat open air narcotics violations" using an unmarked black Dodge Durango. Johnson testified that at approximately 1:5O p.m. on April 7, 2015, he saw defendant on the sidewalk of Scotland Road, "just standing in and about the area." Johnson testified he was familiar with defendant from "[p]rior street encounters" and because he had "also been arrested for a [controlled dangerous substance] violation."

When Johnson first noticed defendant, he was "counting currency, and . . . talking to . . . a couple [of] different people." Johnson watched defendant for approximately "five or ten minutes" before deciding to approach him. He estimated he

was "a little bit shy of 100 feet" away from defendant at the time. Johnson acknowledged that defendant was not engaged in any suspicious activities at the time he decided to step out of the unmarked police car "to conduct a field interview."

When asked to explain what he meant by a "field interview," Johnson said he "just wanted to see [defendant's] whereabouts as far as why he was in a location." Johnson made clear, however, that he did not have any intention to search or even frisk defendant at that time. Johnson drove the unmarked police car to where defendant was standing. By his own estimation, he was "about 25 feet" away from defendant when he stepped out of the car. Although defendant did not say anything, Johnson nevertheless assumed defendant had noticed him "because he started to walk away . . . and <u>that made me and the other detective decide to just conduct a field interview</u>." (Emphasis added).

Johnson and the other three detectives were all dressed in civilian attire, with their police badges "displayed."[1] They identified themselves as police officers and asked defendant to stop. Defendant immediately stopped without incident. In response to the prosecutor's question, Johnson testified that

---

[1] Johnson did not specify how the badges were displayed.

defendant did not say or do anything before they identified themselves as police officers. Johnson testified that before he or his fellow officers asked him any questions, defendant "just blurted out" the following statement: "I saw you guys and thought you wanted me to leave." According to Johnson, defendant then "removed a small bag of marijuana . . . [from his person and] threw it to the ground."[2]

At this point, Johnson testified that they picked up the bag of marijuana from the ground and arrested defendant. The officers also took possession of a knapsack defendant had on his person and transported him to the police station. Johnson testified they did not search the knapsack at the time. After they were in the police station, Johnson testified that they opened and searched the knapsack following a protocol for inventory of a prisoner's property.

Johnson testified that Sergeant Robert Stefanelli conducted the inventory search. The knapsack contained twenty-four grams of marijuana, "a 32-caliber handgun fully loaded with six

---

[2] Earlier in his direct testimony, Johnson claimed he did not remember many of the details of his encounter with defendant. The prosecutor provided him with a copy of the police report of this incident as a means of refreshing his recollection. With respect to defendant's alleged act of self-incrimination, Johnson read directly from the police report without objection.

bullets[,]" and four Xanax pills.    The prosecutor also asked Johnson the following questions:

> Q. Did you have any suspicion or reason to believe that those items were inside the bag prior to it being opened at the police precinct?
>
> A. Yes.
>
> Q. Okay. And what caused that suspicion . . . [?]
>
> A. It was . . . a strong [odor] of marijuana emanating off his person and . . . [there] was a decent weight to the bag also.

On August 29, 2016, the judge issued an oral decision denying defendant's motion to suppress.    The judge rejected defense counsel's argument that the contents of the knapsack should have been suppressed because the State did not produce an "inventory sheet."    Although the existence of an inventory sheet would have "bolstered" the State's claim, the judge found the police had the right to conduct an inventory search of a knapsack that was carried by defendant on his person at the time of his arrest:

> I don't find any evidence to show that it was a pretext, as argued by defense counsel, . . . the detective did indicate that the bag was heavy for its size or condition and that he did smell marijuana coming out of it.    But the safety factor, which was the detective's basis for conducting the inventory search, as opposed to just handing the defendant his backpack

A-3305-16T3

or holding onto his backpack until his criminal matter was resolved is a reasonable factor in this case.

Defendant now appeals raising the following argument.

> POINT I
>
> THE TRIAL COURT ERRED IN FINDING THAT POLICE LAWFULLY STOPPED DEFENDANT WHERE THERE WAS NO SUSPICION THAT HE WAS ENGAGED IN CRIMINAL ACTIVITY. BECAUSE THE EVIDENCE SEIZED WAS TAINTED BY THE UNLAWFUL STOP, DEFENDANT'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

As the record we described here shows, defense counsel did not challenge the propriety of defendant's stop when he argued the matter before the motion judge. Although not raised by the State, appellate counsel did not identify that this issue was not raised before the motion judge, as required by Rule 2:6-2(a)(6). Under these circumstances, we are bound to disregard any error or omission "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see also State v. Prall, 231 N.J. 567, 581 (2018); State v. Macon, 57 N.J. 325, 337-38 (1971). We conclude there is no factual or legal basis to interfere with the decision of the Criminal Part.

With respect to how the detectives interacted with defendant at the inception of their encounter, the motion judge made the following findings:

> The defendant walked away and the officers identified themselves as police and asked him to stop, which he did. It does not appear that a simple stop and inquiry violates any of the defendant's rights as he did, in fact, stop and speak to them. At that time the defendant, according to Detective Johnson, stated I saw you guys and thought you might want me to leave and then took out what appeared to be a bag of marijuana and threw it on the ground, which was retrieved by the police officers. At that time [defendant] was arrested and read his [Miranda][3] rights.

The judge's findings are entirely based on his assessment of Detective Johnson's credibility. As an appellate court, we are bound to accept a trial judge's factual findings based on the judge's assessment of a witness's credibility. State v. Locurto, 157 N.J. 463, 474 (1999). Based on these findings, defendant voluntarily discarded a bag of marijuana in the plain view of the police officers.

Our Supreme Court has held that a police officer may conduct a "field inquiry" with a person without "grounds for suspicion," as long as the encounter is not predicated on "impermissible reasons such as race." State v. Rodriquez, 172 N.J. 117, 126 (2002) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)). The police may initiate a field inquiry "by approaching an individual on the street, or in another public

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

place, and 'by asking him if he is willing to answer some questions[.]'" Ibid. (alteration in original) (emphasis added) (quoting State v. Davis, 104 N.J. 490, 497 (1986)). Thus, "[a] field inquiry is not considered a seizure 'in the constitutional sense so long as the officer does not deny the individual the right to move.'" Ibid. (emphasis added) (quoting State v. Sheffield, 62 N.J. 441, 447 (1973)).

Here, the "field inquiry" between the police and defendant was described through Johnson's direct testimony as follows:

> Q. Did you identify yourselves at any point as police?
>
> A. Correct.
>
> Q. And did you inform him to stop or no?
>
> A. Yes.
>
> Q. Did he -- did he stop?
>
> A. Yes.
>
> [(Emphasis added).]

Johnson also testified that he was familiar with defendant from prior narcotic-related encounters and arrests. From this record, there is no rational basis to conclude Johnson did or said anything to defendant that could be construed as denying his right to move freely. Rodriguez, 172 N.J. at 126. The record shows defendant stopped when Johnson "informed" him to

stop. There is no evidence of coercion. It can be argued that every time a police officer asks anyone to stop, there is an implied common sense notion that refusal is not an option. However, under the constitutional concept of a field inquiry, defendant has the burden of showing he had an objectively reasonable belief that he was not free to ignore Detective Johnson's request to stop. There is insufficient evidence in the record for this court to reach this conclusion. Defense counsel's failure to raise this argument before the motion judge buttresses this conclusion. R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION