# RECORD IMPOUNDED

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5188-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

H.S.G.,[1]

     Defendant-Appellant.

_____

> Submitted June 3, 2020 – Decided July 14, 2021
>
> Before Judges Fuentes and Enright.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0371-19.
>
> Galantucci & Patuto, attorneys for appellant (David J. Altieri, on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (Craig A. Becker, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9)-(10).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

On February 26, 2019, a Family Part judge in Bergen County issued a restraining order (TRO) under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant H.S.G., a man with whom plaintiff had had a romantic relationship. The TRO prohibited defendant from having "<u>any</u> oral, written, personal electronic, or other form of contact or communication with [p]laintiff," and, inter alia, "barred" him from plaintiff's residence and place of employment.

On March 23, 2019, defendant was arrested on the charge of fourth degree contempt under N.J.S.A. 2C:29-9(a), for purposely and knowingly violating the TRO "by calling [plaintiff] via cell phone, and going to [plaintiff's] house and having a verbal argument[.]" On March 25, 2019, the Bergen County Prosecutor's Office downgraded the contempt charge to a disorderly persons offense, N.J.S.A. 2C:29-9(b)(2), and transferred the prosecution of this complaint to the Family Part. On June 19, 2019, defendant was tried before Judge Avis Bishop-Thompson.

The State's case consisted entirely of the testimony of Fair Lawn Police Officers Juan Rodriguez and Brad Pindyck. Defendant did not testify or call

2

any witnesses. On this evidence, Judge Bishop-Thompson found defendant guilty of the disorderly persons offense of contempt. After providing defendant with the opportunity to address the court and considering the arguments of counsel, Judge Bishop-Thompson found aggravating factors N.J.S.A. 2C:44-1(a)(3) and (9), and mitigating factor N.J.S.A. 2C:44-1(b)(10). The Judge sentenced defendant to a probationary term of twelve months, and imposed the mandatory monetary penalties.

On appeal, defendant raises the following argument:

THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT ACTED KNOWINGLY.

After considering the record developed at trial and mindful of our standard of review, we affirm.

Fair Lawn Police Officer Rodriguez was the State's first witness. He testified that on March 23, 2019, defendant walked into police headquarters and "stated that he was assaulted by his ex-girlfriend." Based on this initial encounter, Officer Rodriguez considered defendant at this point as a "victim of domestic violence." Defendant sat down "at the lobby area and then he actually explained what had occurred during the time he was at [plaintiff's] house."

As Officer Rodriguez began to explain to him his rights as a victim of domestic violence, defendant took out his cellphone and showed him a video

recording of the incident: "Apparently there was screaming, shouting and he was just holding the phone and she was just pushing him, striking him." Defendant specifically identified the woman in the video as his former girlfriend. Officer Rodriguez testified that based on what he saw in the video, he and another Fair Lawn Police Officer responded to the woman's residence and arrested her for the disorderly persons offense of simple assault, N.J.S.A. 2C:12-1(a). Rodriguez explained that since the police officers viewed defendant as the victim of this assault, they allowed him to remain in the lobby of the police headquarters.

When the police officers returned to headquarters, Officer Rodriguez explained to defendant that they had his former girlfriend in custody and that he needed to fill out "a couple [of] forms . . . and that was it." However, when Officer Rodriguez checked the domestic violence registry to determine whether the woman had an active domestic violence restraining order against her, he realized it was defendant who had violated the terms of an active TRO. Officer Rodriguez testified that he immediately released the woman and arrested defendant.

Fair Lawn Police Officer Brad Pindyck was the State's second and final witness. He transported defendant from Fair Lawn Police headquarters to the

Bergen County Jail in the backseat of his police vehicle. Officer Pindyck explained that this type of police car is equipped with mobile video recording devices. "It's a front end rear mounted dash cam/back seat cam." He testified that recording video devices were activated during the entire trip to the jail, including audio.

Officer Pindyck authenticated the video recording and it was thereafter admitted into evidence without objection. The transcript of the audio recording reflected in the trial transcript is mostly indiscernible. It indicates that defendant was aware of the TRO, but claimed that he was told by unidentified sources that "if you don't get a court day it's expired."

Defense counsel's summation to Judge Bishop-Thompson focused on defendant's state of mind:

> Here we have clear evidence that one element, the most fundamental element, the mens rea, his mental state, his state of mind, cannot be met because he had no idea, he could not have acted knowingly as required by the statute if he did not know that there was a TRO in effect. In fact, he had heard to the contrary that it had been dropped.

In rebuttal, the prosecutor highlighted in his summation that the evidence undermined defendant's claims that he acted under the good-faith impression that the TRO was no longer legally viable:

A-5188-18

> [Defendant] was served with a restraining order. The language in the restraining order is very clear. It says that this restraining order is active until further order of the court and upon service to the defendant. There is no evidence before this court that suggest[s] this defendant was served with an order by a court dismissing a case. He should have known because he was served with a restraining order that if he was to go near [plaintiff] he is in violation of that restraining order. If the language is clear within the order itself, then that is enough to impute knowledge on this defendant.

In her oral opinion, Judge Bishop-Thompson first articulated the relevant standard of proof the State is obligated to meet, and reviewed in great detail the testimonial and documentary evidence. At the end of this analysis, the Judge concurred with counsel's assessment of the central question in the case: " [D]id defendant purposely or knowingly violate the provisions of the TRO on March the 23rd." The judge found defendant's claim of good faith ignorance unsupported by the record.

> The temporary restraining order provided to defendant made it very clear that the provisions could only be modified by court order.

> In particular, looking at page 5 of 5 in the middle of [the] page, notice to defendant, it says notice to appear to plaintiff and defendant. Defendant knew that he was to appear for the final hearing on March 6th, 2019 at 8:30 a.m. The bottom of that particular box there is in bold, 'important, the parties cannot themselves change the terms of the order on their own. This order may

6

only be changed or dismissed by the Superior Court. The named defendant cannot have any contact with plaintiff without permission of the court.'

So in the absence of any documentation indicating a dismissal order was indeed entered and provided to the defendant, defendant . . . had been put on notice since March 1st that there was an active TRO in place, no other court documentation had been provided to defendant indicating that the temporary restraining order had been dismissed. In the absence of such documentation, he was on notice he was to stay away from [plaintiff] and he did not.

Therefore, I find that defendant purposely and knowingly violated a provision of the temporary restraining order that had been entered on . . . February the 26th, 2019.

The decision is also based upon the argument, again, apparently that he didn't know. I find that aside from being internal[ly] inconsistent I find that to be incredulous because of the language which governs the operation of the temporary restraining order and how long the temporary restraining order would remain in effect.

Our standard of review involving "the findings and conclusions of a trial court following a bench trial are well-established." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions about the

7

evidence," <u>Mountain Hill, L.L.C. v. Twp. of Middletown</u>, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting <u>State v. Barone</u>, 147 N.J. 599, 615 (1997)).

Against this standard of review, Judge Bishop-Thompson's findings are unassailable. We also agree with Judge Bishop-Thompson's legal conclusion. Defendant was, if not actually, constructively aware of the legal viability of the TRO at the time he went to his former romantic partner's residence and had this confrontation. We thus affirm substantially for the reasons expressed by Judge Bishop-Thompson in her thoughtful oral opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5188-18