# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3930-23

STATE OF NEW JERSEY
IN THE INTEREST OF
Z.L.F.-P., a juvenile.

_____

Submitted October 14, 2025 – Decided October 22, 2025

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0299-23.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant Z.L.F.-P. (Rebecca Van Voorhees, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent State of New Jersey (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Z.L.F.-P. ("Zack")[1] appeals from a Family Part order entered after a four-day trial and which adjudicated him delinquent for conduct that, if committed by an adult, would have constituted first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Among other provisions, the court's final disposition sentenced Zack to three years of probation, ordered no contact with the victim, supervised conduct with children under thirteen, required Zack to comply with Megan's Law, and mandated he complete an outpatient treatment program for sexual offenders and comply with all recommendations.

For the first time on appeal, Zack contends the judge should have vacated the delinquent adjudications and acquitted him sua sponte under Rule 3:18-1 because the "State failed to prove its case beyond a reasonable doubt." In support, Zack maintains the State presented no physical or testimonial evidence to corroborate Sarah's allegations and instead relied exclusively on Sarah's testimony to establish assaults occurred.

Zack further argues the State's theory that he assaulted Sarah in a small residence on multiple occasions was incredible because not a single family

---

[1] We use initials and pseudonyms to protect the privacy interests of the family. R. 1:38-3(d)(12); see also N.J.S.A. 2A:82-46.

member witnessed any incident, or corroborated any of her allegations. He also notes the State failed to call Susan, the victim's sister who, according to Sarah, could have supported her allegations. Further, Zack argues that not a single member of Sarah's family testified that Sarah ever expressed negative feelings towards him.

Zack maintains the case was thus reduced to a credibility battle pinning Sarah's word against his own. He states he denied all the allegations while Sarah's testimony "was riddled with holes and inconsistences" with respect to when the assaults specifically occurred, on how many occasions, and to whom or when she disclosed the assaults. In sum, Zack argues based on the implausibility of Sarah's accusations and her lack of credibility as a witness, no rational fact finder could have correctly found the State established all elements of the charged crimes beyond a reasonable doubt.

We have considered Zack's arguments in the context of the record, including the court's findings of fact and conclusions of law, and the applicable legal standards, and conclude they are without merit. We accordingly affirm.

In 2016, Sarah was residing in an apartment in Elizabeth with her mother Sherie, her stepfather Louis, her younger sister Susan, and older half-sister Caroline. She testified that while living in Elizabeth, Zack, who is her

3

stepbrother, would visit occasionally on weekends. Sarah stated she did not have a positive relationship with Zack and "he made [her] feel uncomfortable." Sarah also testified on numerous occasions while residing in Elizabeth, Zack sexually assaulted her by making her put his "private area" in her mouth, which she described as his penis. Four years later in 2020, when she was twelve years old, Sarah moved to Bethlehem, Pennsylvania to live with her father.

Sarah testified that Zack began sexually assaulting her when she was nine and he was sixteen. She recalls that one night, while in bed, she saw Zack through an opening in her door, and he motioned her to leave her room and go into the bathroom. When Sarah went into the bathroom, Zack pulled down his pants and exposed his penis. He then directed Sarah to put his penis in her mouth, which she did. Zack eventually pushed Sarah away from him and pulled up his pants. Sarah left the bathroom, went back to her room, and cried.

Sarah also stated Zack assaulted her on other occasions. She recalled that one night, when Sarah and Susan were watching television, Zack walked into their room. Zack laid down with Sarah in her bed and pulled down his pants. Sarah stated she did what she thought she was "supposed to do [,] what I did last time, which is put my – his private area into my mouth." Sarah stopped once Zack pulled his pants back up and left the room.

4

Sarah also described a third time Zack sexually assaulted her. During that incident Zack again told Sarah to go into the bathroom where he forced her to perform fellatio on him. This time, however, he also made her kneel over a black plastic bag filled with clothes in the living room. She stated after Zack pulled his pants down she felt something wet on her back. Zack later used a shirt to wipe the substance off her back.

While traveling from Washington D.C., to New Jersey in 2021, Sarah suffered from an anxiety attack and went to the hospital where she disclosed Zack's assault to a nurse and also told her therapist and family members something happened. She stated, however, that she first told a law enforcement officer when a detective came to her school in 2022.

Sarah's mother also testified and recalled picking Zack up along with Louis, Caroline, Susan, and Sarah for weekend visits to the Elizabeth apartment. Sherie recalled that Zack would spend most of his time with his sister Caroline and appeared uninterested in interacting with either Sarah or Susan.

Sherie testified Zack slept in Caroline's bedroom or in the living room during his visits. Sherie stated Zack stopped visiting when he turned seventeen or eighteen. Sherie described the apartment as having a living room, kitchen,

5

laundry room, three bedrooms, a full bathroom in the hallway, and the master bathroom, closed off from the other rooms.

During her testimony, Sherie spoke about the trip back from Florida where Sarah had an "episode" resulting in a visit to the hospital. Sherie stated she became aware after this hospital visit that Sarah was in therapy at school, and the allegations against Zack.

The State also called Jessica Tattoli, a Detective at the Union County Prosecutor's Office in the Special Victims Unit. Detective Tattoli detailed her investigation, including her interactions with the Division of Child Protection and Permanency and a Pennsylvania law enforcement agency.

Zack also testified and denied he ever sexually assaulted Sarah. He stated he visited the family ten to twelve times between 2015 and 2018 when he was between fourteen and seventeen and had a "pretty good" relationship with Caroline.

Faith Dover, a Department of Child Protection and Permanency case worker and Zack's father both testified on Zack's behalf. Ms. Dover stated in April of 2022, she investigated Sarah's allegations of sexual abuse, informed Sarah's father to report the abuse to law enforcement and after reported it to law

enforcement herself. Ms. Dover also confirmed that the initial report about the allegations came from Sarah's therapist.

Zack's father testified regarding the frequency of Zack's visits, the layout of the home, and his relationship with Sherie. He stated Sarah was enamored with Zack and he never saw Zack in Sarah's room, or in the bathroom with her. He also stated he never witnessed any problems between Zack and Sarah. He admitted, however, he and Sherie would sleep with their door closed and acknowledged it was possible that someone could use the bathroom at night. He also stated that despite residing with his daughters for years and still loving them, he did not have a relationship with them.

Finally, Eric Santos, a New Jersey State investigator, was called as a rebuttal witness. Among other issues, he explained the information he gleaned from his interviews of Louis and Caroline during his investigation.

After considering all the evidence, the court determined the State established Zack's guilt beyond a reasonable doubt. It entered a conforming order and explained its decision in a comprehensive oral opinion.

In its decision, the court determined Sarah to be "extremely credible," and explained "nothing in her testimony remotely suggests that she was not telling the truth." The court specifically found:

A-3930-23

Sarah's demeanor and tone, while testifying, suggests that she was telling the truth. She identified, through her testimony, the layout of the house where the incidents occurred with particularity. Her testimony was consistent from direct examination to cross-examination. She remembered in detail what happened to her, as if it happened yesterday, which suggests that what happened to her was still fresh in her mind, although it had happened some years ago. The court finds her testimony credible and that, initially, she was afraid to tell anyone what happened for fear that she would not be believed, as [Zack] warned her that if she told he would say she was lying. However, the Court finds that her testimony is believable and that she is a kid that always tells the truth.

The court finds her testimony credible and truthful. In fact, nothing in her testimony remotely suggests that she was not telling the truth or that she was making up a story. She was too detailed for her story to be made up. In fact, the notion that [she] was making up a story so that she could go live with her father, as suggested by the defense during cross-examination, was a bridge too far. [Sarah] has been living with her father since 2020, but did not disclose the incidents until 2022. That suggests to this Court that she had no valid reason to disclose the incident, other than to tell someone what happened to her at the hands of [Zack] and not to get an advantage to stay with her father.

The court, however, simply did not find Zack "credible as to the allegations," and "not persuasive." As the court explained:

His testimony seemed rehearsed and nonchalant. His body language seemed to suggest that if he just denied the allegation that no one would believe the victim. His testimony was simply not believable.

8

It is well established that the State is required to prove every element of a criminal offense beyond a reasonable doubt. State v. Delibero, 149 N.J. 90, 99 (1997). The same allocation of the burden of proof applies in juvenile delinquency proceedings. State ex rel. J.G., 151 N.J. 565, 593–94 (1997). Moreover, we are obliged to "'give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

We conduct a de novo review of a court's denial of a motion for a judgment of acquittal at the close of the State's case pursuant to Rule 3:18-1. State v. Josephs, 174 N.J. 44, 81 (2002). Under the Rule, a court shall enter a judgment of acquittal at the close of the State's case on the defendant's motion or its own initiative "if the evidence is insufficient to warrant a conviction." R. 3:18-1. In State v. Reyes, our Supreme Court established the following standard to determine if the State presented adequate evidence to survive a motion for acquittal under Rule 3:18-1:

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well

9

as of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

[50 N.J. 454, 459 (1967).]

In our review of an order denying a motion for a judgment of acquittal, "the relevant question is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Josephs, 174 N.J. at 81 (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We "must consider the State's proofs in light of the [Reyes] standard and ... determine therefrom how the motion should have been decided." Ibid. (alteration in original).

After our de novo consideration, we are satisfied the State's evidence, and specifically the credible testimony of Sarah, supported the court's adjudication of the charged offenses beyond a reasonable doubt. As noted, Sarah testified when she was nine years old Zack inserted his penis in her mouth and repeated this conduct on multiple occasions. Sarah's testimony, which the court found credible, establishes the elements of both charges.

Indeed, the act of fellatio, establishes the requirement of penetration, see N.J.S.A. 2C:14-1(c), and that Zack's conduct was knowing and purposeful. In

10

addition, Sarah was less than thirteen when the conduct occurred as she testified she was nine when the first assault took place. Finally, Sarah's credible testimony established that Zack forced her to engage in conduct impairing or debauching the morals of a child.

At bottom, Zack's entire argument is grounded in his disagreements with the court's credibility findings. We are satisfied the court's factual findings are amply supported by the record and affording the State all reasonable inferences from those proofs, we reject his challenge to the court's adjudications. The State's evidence fully supports each element of N.J.S.A. 2C:14-2(a)(1) and N.J.S.A. 2C:24-4(a)(1) beyond a reasonable doubt. State v. Reyes, 50 N.J. at 459.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3930-23