**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5112-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANIEL MERKIN,

     Defendant-Appellant.

_____

Argued November 14, 2018 – Decided December 28, 2018

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 3-2017.

Peter M. O'Mara argued the cause for appellant (The O'Mara Law Firm, attorneys; Peter M. O'Mara, on the brief).

Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

PER CURIAM

Defendant appeals from a judgment of the Law Division, dated June 20, 2017, which found him guilty of driving while under the influence of intoxicating liquor, narcotic, or habit-producing drug (DWI), pursuant to N.J.S.A. 39:4-50. We affirm.

I.

On Sunday, April 17, 2016, Officer Stephen Burzachiello of the Jamesburg Police Department (JPD) responded to a reported car accident on Forsgate Drive in Jamesburg. The officer observed a gray Honda Civic straddling the divider with heavy front-end passenger-side damage. The vehicle had collided with a nearby telephone pole. Defendant had been driving the car. Burzachiello arrested defendant and charged him with DWI. The matter proceeded to trial in the municipal court.

At the trial, Burzachiello testified that he approached the car and observed a strong odor of burnt marijuana emanating from the vehicle and from defendant. He described the odor as "extremely noticeable." The airbags had deployed and liquids were leaking from the car. Defendant was the only occupant of the vehicle and there were no other persons involved in the accident. The officer

2

asked defendant if he was okay, and defendant replied that he had injured his neck and back. Burzachiello called for an ambulance.

While waiting for emergency personnel to arrive, Burzachiello asked defendant if he was under the influence of any intoxicating drugs or alcohol. Defendant showed Burzachiello an interlock device[1] and said he would not be able to operate a vehicle if he had been drinking. The officer observed vomit on the interior of the driver's door and on the exterior of the door immediately behind the driver. He asked defendant what happened. Defendant said he became ill while driving, began vomiting, and lost control of the car.

Burzachiello stated that defendant's "face was flushed" and he "appeared to be very nervous and anxious." Defendant also was moving and speaking slowly. The officer observed a sticker on the rear window of the car, which appeared to be in the shape of a leaf of marijuana. Burzachiello told defendant he would normally conduct a field sobriety test at this point, but he was not able to do so because of the emergency nature of the situation.

---

[1]  An interlock device, also called an ignition interlock device, is a "blood alcohol equivalence measuring device which will prevent a motor vehicle from starting if the operator's blood alcohol content exceeds a predetermined level when the operator blows into the device." State v. Robertson, 228 N.J. 138, 151 n.2 (2017) (quoting N.J.S.A. 39:4-50.17(d)).

A-5112-16T3

Burzachiello then asked defendant if he would submit to a urine test, and defendant refused. Emergency personnel arrived and attended to defendant. They put defendant on a stretcher and placed him in an ambulance. Burzachiello then contacted the Middlesex County Prosecutor's Office (MCPO) and requested that a detective contact a judge and seek a search warrant. He requested a call back.

Burzachiello accompanied defendant in the ambulance to the hospital. He told defendant he was under arrest for DWI and advised him of his Miranda rights.[2] Burzachiello did not question defendant for the remainder of the ride. He testified that once they arrived at the hospital, on their own initiative, hospital staff asked defendant to provide a urine sample. They informed Burzachiello that defendant had provided cold tap water as a sample.

A detective from the MCPO called Burzachiello and the judge conducted a conference call. The judge granted the search warrant, which authorized the authorities to take a sample of defendant's blood. Burzachiello notified a nurse at the hospital that the judge had issued the search warrant, and the nurse took defendant's blood sample. The nurse gave the vials of defendant's blood to Burzachiello, who brought them to the JPD's headquarters and secured the vials

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

as evidence. Another officer of the JPD transferred the vials to the New Jersey State Police (NJSP) labs for testing.

Laura Ellen Mahoney (Mahoney), a forensic scientist at the NJSP, testified as an expert regarding the analysis of defendant's blood sample. Mahoney prepared a certified laboratory report of her analysis of the sample. Alcohol was not detected, but the analysis showed the presence of cocaine; benzoylecgonine, a cocaine metabolite; THC-COOH, a marijuana metabolite; lamotrigine, an anti-convulsant; and sertraline, an anti-depressant.[3]

Mahoney testified that the analysis showed that defendant had ingested cocaine and used marijuana at some point before the accident. She noted that defendant's blood tested positive for THC-COOH, which she referred to as carboxy-THC, but she could not determine precisely when defendant last ingested marijuana. Mahoney could not rule out the possibility that defendant used marijuana within a few hours of the blood draw.

Defendant called Herbert Leckie, who was admitted as an expert in the field of drug recognition. Leckie had been a member of the NJSP from 1983 to 2003, when he retired. He testified that THC is the active component of

---

[3] Defendant had been prescribed lamotrigine and sertraline, as well as clonazepam, to treat certain medical conditions.

marijuana or cannabis, and that the NJSP tests only for the carboxy-THC metabolite, and not for the hydroxy-THC metabolite.

Leckie stated that the hydroxy in THC is the component of marijuana that causes impairment. He testified the substance detected in defendant's blood, THC-COOH, is not the component of THC that causes impairment. According to Leckie, the presence of that substance merely indicates that at some point before the sample was taken, the donor had ingested marijuana.

Leckie further testified that the NJSP's test results showed the presence of benzoylecgonine, a cocaine metabolite. Leckie stated it is his understanding that this substance can be detected in a blood sample days after its actual use, but he did not have the training or experience to opine how long that could be. He stated that the officer's observations, which are detailed in the police report, are not observations consistent with impairment by a stimulant like cocaine.

Defendant also called his father as a witness. He testified that he employed defendant at the delicatessen that he owned. He stated that on the morning of the accident, defendant was physically ill and vomiting. He told defendant to leave work and take care of himself. He stated that defendant had a medical marijuana card, which allowed him to smoke marijuana legally in

order to treat a medical condition. Defendant also had prescriptions for medications to treat that condition.

Defendant's co-worker also testified. He said that on the morning of the accident, defendant seemed ill while at work. At one point, he witnessed defendant vomit. The co-worker said defendant left work that day around noon.

The municipal court judge issued an oral opinion on January 3, 2017. The judge concluded that the State had proven beyond a reasonable doubt that defendant had been driving under the influence of various narcotic substances, including cocaine, marijuana, and prescription medications. The judge accordingly found defendant guilty of DWI.

Defendant appealed to the Law Division, seeking de novo review of the municipal court's judgment. Judge Robert J. Jones considered the appeal and filed a written opinion dated June 19, 2017, in which he found defendant guilty of DWI. The judge memorialized his decision in an order dated June 20, 2017.

In a separate order dated January 26, 2018, the judge sentenced defendant as a third-time DWI offender to a ten-year license suspension, 180 days in jail, a $1000 fine, court costs of $33, certain surcharges, and monetary penalties. The judge stayed the sentence pending appeal.

A-5112-16T3

II.

On appeal, defendant argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he was driving under the influence of marijuana or any other intoxicating substance. He therefore argues that the trial court erred by finding him guilty of DWI under N.J.S.A. 39:4-50.

When reviewing a trial court's judgment affirming a municipal court conviction, we must determine whether the trial court's finding of fact "could reasonably have been reached on sufficient credible evidence present in the record." State v. Locurto, 157 N.J. 463, 470-71 (1999) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). In doing so, we give deference to the trial judge's findings if they have been "substantially influenced" by the judge's opportunity to see and hear the witnesses, and have a "feel" of the case. Id. at 471 (quoting Johnson, 42 N.J. at 161).

Furthermore, our deference to the trial court's findings of fact is especially appropriate where the municipal court and the Law Division have reached the same result on "purely factual issues." Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very

obvious and exceptional showing of error."  Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)).

Here, the Law Division found defendant guilty of DWI pursuant to N.J.S.A. 39:4-50.  The statute prohibits the operation of a motor vehicle while "under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug[.]"  Ibid.  An individual is "under the influence" of a narcotic drug "if the drug produced a narcotic effect 'so altering his or her normal physical coordination and mental faculties as to render such person a danger to himself as well as to other persons on the highway.'"  State v. Tamburro, 68 N.J. 414, 421 (1975) (quoting State v. DiCarlo, 67 N.J. 321, 328 (1975)).

In this case, defendant argues that the State failed to present sufficient proof to support his conviction of driving under the influence of marijuana.  He contends the evidence falls short of the evidence deemed sufficient in State v. Bealor, 187 N.J. 574 (2006).  We disagree.

In Bealor, two State Police Troopers observed the defendant driving erratically in the early morning hours.  Id. at 577.  The defendant was weaving several times across the double lines in the road and eventually veered into the oncoming lane.  Ibid.  The Troopers pulled the defendant over and approached

A-5112-16T3

his vehicle. Id. at 578. When one of the Troopers approached the passenger side door, he smelled burnt marijuana. Ibid.

The Trooper testified that defendant's eyes appeared bloodshot and glassy. Ibid. His eyelids drooped down, and his face was pale and flushed. Ibid. The Trooper observed the defendant fumbling in the center console and glovebox looking for his credentials. Ibid. The defendant spoke very slowly, and slurred his words. Ibid. The Trooper also smelled the odor of alcohol and marijuana on his body. Ibid.

The Troopers conducted a field sobriety test and asked the defendant to recite the alphabet. Ibid. They discovered a smoking pipe with marijuana residue in the defendant's rear pocket. Ibid. They placed the defendant under arrest, and the defendant waived his Miranda rights. Id. at 578-79. The Troopers also administered two breathalyzer tests. Id. at 579.

The Trooper testified that the defendant was generally uncooperative for the remainder of the time he spent in custody. Id. at 579-80. At the trial in the municipal court, two forensic scientists testified for the State and confirmed that the defendant's urine sample tested positive for marijuana metabolite and that the pipe recovered from the defendant's pocket contained residue of marijuana. Id. at 580-81.

10

The Supreme Court held that "competent lay observations of the fact of intoxication," and "additional independent proofs" showing that the defendant consumed a narcotic as of the time of his arrest were sufficient to allow the fact-finder to conclude beyond a reasonable doubt that the defendant was intoxicated. Id. at 577. The Court determined that the State had proven the "fact of defendant's intoxication" with the Trooper's testimony regarding the defendant's erratic driving, behavior, demeanor, and the odor of burnt marijuana on the defendant. Id. at 590.

The Court also stated that the State had qualified experts testify as to "the presence of marijuana in defendant's blood stream at the time of the arrest and its likely source." Ibid. The Court concluded that "[t]he aggregate of those proofs was more than sufficient to permit the fact-finder to conclude, beyond a reasonable doubt, that defendant violated the [DWI] statute." Ibid.

Here, defendant argues that although Burzachiello testified that he smelled burnt marijuana, the officer's observation was not corroborated as in Bealor, where the officer found a smoking pipe with marijuana residue. In this case, however, the municipal court judge and Judge Jones both found Burzachiello's testimony credible. Furthermore, in his opinion, Judge Jones found that based on his training and experience, Burzachiello had the ability to

11

distinguish the smell of marijuana from other odors that might have been present at the time.

Moreover, Burzachiello testified that he believed defendant smoked marijuana five to ten minutes before the accident. Burzachiello's testimony was corroborated by the officer's observations of defendant at the accident scene and thereafter. Burzachiello noted that defendant's face was flushed, and his speech and movements were slow. The fact that the officer did not find a pipe with marijuana residue, as in Bealor, is irrelevant. In his opinion, Judge Jones correctly observed that a person may ingest marijuana without such paraphernalia.

Defendant also asserts that in Bealor, the defendant's urine was tested, whereas in this case, a sample of his blood was taken and analyzed. Defendant contends this is a significant distinction because a urinalysis will reveal recent usage "more so than" a blood analysis, which he contends reveals historic usage of a narcotic. He notes that in Bealor, THCC was found, and this is different from the THC-COOH found in this case.

However, in Bealor, the Court made no distinction between urine tests and blood tests as a form of "additional independent proof[] tending to demonstrate [a] defendant's consumption of narcotic[.]" Bealor, 187 N.J. at 577, 590.

A-5112-16T3

Moreover, defendant can hardly rely upon the fact that a urinalysis was not performed here. As stated previously, the hospital staff asked defendant to provide a urine sample. Judge Jones found that defendant attempted to "cheat" the test by providing tap water instead of his urine.

Defendant further argues that the metabolite found in his blood, THC-COOH, does not provide an indication as to when he consumed the marijuana, but Judge Jones found that there was other evidence that supported Burzachiello's testimony that defendant smoked the drug five to ten minutes before the accident. The record supports the judge's finding.

In addition, defendant argues that in Bealor, the Troopers administered a psychophysical test, and the Trooper testified regarding the defendant's symptoms and characteristics, which were the symptoms and characteristics of an intoxicated person. According to defendant, this is substantially different from the evidence presented here. We disagree. In this case, the evidence established that Burzachiello was not able to administer any field sobriety tests because of the emergency nature of the situation.

Furthermore, as Judge Jones found, Burzachiello's observations of defendant were consistent with his view that defendant had consumed marijuana shortly before the accident. Burzachiello stated that defendant's face was

13

flushed, and defendant moved and spoke slowly. As the courts below both found, the State presented circumstantial evidence which established that defendant was intoxicated at the time of the accident, and the cause of that intoxication was defendant's consumption of marijuana.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5112-16T3