**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0250-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY S. EADY,

    Defendant-Appellant.

_____

Submitted June 15, 2020 – Decided June 26, 2020

Before Judges Fisher and Fasciale.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 14-09-1558 and 15-01-0080.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Ednin D. Martinez, Assistant Prosecutor, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant's post-conviction relief (PCR) petition was denied after a four-day evidentiary hearing. Defendant appeals, arguing, among other things, that he was denied the effective assistance of counsel because his attorney advised him to plead guilty pursuant to a plea agreement that allowed for "a de facto life sentence." In other words, defendant argues that because "he received no benefit" from the plea agreement, his attorney was ineffective. We disagree and affirm.

The record reveals that defendant was charged with crimes set forth in separate indictments. In September 2014 he was charged, along with co-defendant Robert Warren, with:

- first-degree carjacking on Alan Deravanesian;

- first-degree armed robbery of Zachary Garry;

- second-degree armed burglary of the residence of Dylan Brancaccio;

- second-degree unlawful possession of a weapon;

- second-degree possession of a weapon for an unlawful purpose;

- third-degree aggravated assault of Garry;

- third-degree aggravated assault of Deravanesian;

2

- third-degree aggravated assault of Brancaccio; and

- third-degree aggravated assault of Jeremy Fernandez.

In January 2015, defendant was charged with:

- the first-degree murder of Jamal Cooks;

- the first-degree murder of Sean Spencer;

- two counts of second-degree unlawful possession of a weapon; and

- two counts of second-degree possession of a weapon for an unlawful purpose.

Pursuant to a plea agreement, defendant pleaded guilty to the first-degree murders of Cooks and Spencer, the first-degree carjacking that victimized Deravanesian, the first-degree armed robbery that victimized Garry, and the second-degree burglary committed against Brancaccio. The remaining charges, as well as charges contained in yet another indictment, were dismissed.

On June 11, 2015, the judge sentenced defendant to a thirty-year prison term, subject to a thirty-year period of parole ineligibility, for the murder of Cooks, a consecutive thirty-year prison term, also subject to a thirty-year period of parole ineligibility, for the murder of Spencer, and a fifteen-year prison term, subject to an eighty-five percent period of parole ineligibility, for carjacking.

A-0250-18T2

The twelve- and seven-year prison terms imposed for the robbery and burglary convictions were ordered to run concurrently to the fifteen-year prison term on the carjacking conviction, which was ordered to run consecutively to the consecutive prison terms imposed for the murders of Cook and Spencer. In short, the judge imposed an aggregate seventy-five-year prison terms, with a seventy-two-and-one-half-year period of parole ineligibility.

Defendant appealed the sentence imposed. We affirmed, State v. Eady, No. A-5307-14 (App. Div. Mar. 9, 2016), and the Supreme Court denied defendant's petition for certification, 228 N.J. 85 (2016).

Defendant filed his PCR petition in December 2016, asserting that his attorney advised him he would receive no more than a thirty-year sentence on all charges if he accepted the plea offer. The judge conducted an evidentiary hearing at which time defendant called his father, his mother, and himself as witnesses. The State called defendant's trial attorney and the assistant prosecutor as witnesses.

As explained in the judge's written decision, defendant's father testified that he spoke twice to defense counsel, who explained that defendant's fingerprints on the murder weapon was the "900 pound gorilla in the room" and that if defendant pleaded guilty he could "write paperwork for him to get 30

years"; he also testified that counsel never told him defendant would face more than thirty years in prison. Defendant's mother testified that counsel told her numerous times on the telephone and in person that her son would be sentenced to between fifteen and thirty years for the murders and that "they would run at the same time, and the other charges for carjacking would be dismissed."

Defendant testified that he was told he faced a life sentence if he went to trial but that if he pleaded guilty he would be sentenced to a "30 with a 15." According to defendant, his attorney told him that "because [he] didn't kill a baby or a cop[,]" he would receive a thirty-year prison term with a fifteen-year prison term if he pleaded. He asserted that counsel went over the plea forms with him in the county jail a few weeks before the guilty plea and that counsel pointed to question number seven, which indicated "30," as the term that he would receive. Defendant testified that his attorney never told him, as the judge described it in his opinion, "that if he ple[a]d[ed] guilty he could face up to 110 years in prison, or up to 90 years with 85% parole ineligibility." He also testified that he was not shown the information contained in response to question number thirteen, which revealed that the State would seek consecutive terms at sentencing. Defendant claimed that if he had known the greater exposure permitted by the plea agreement, he would have gone to trial.

Defense counsel testified that he met and spoke with both defendant's parents and advised that the evidence of defendant's guilt was overwhelming, that defendant would be convicted if he went to trial, and that his only chance to "somehow walk out of prison" was to enter into the plea agreement.

The judge summarized trial counsel's testimony about the plea form and his discussions with defendant about the plea form in the following way:

> [Counsel] testified that he went over the plea forms with [defendant] at the jail so that they would not have to rush in the courthouse. He testified that he told [defendant] that Question 13 was left blank at the time to be filled in by the Assistant Prosecutor at the time of sentencing with specific language requesting consecutive terms on the homicide charges. [Counsel] testified that he discussed the terms of the plea with [defendant], and told [defendant] that he would be arguing for concurrent sentences on the homicide charges. [Counsel] testified that he wrote "30" as the statutory maximum for murder, despite the fact that "Life" was the actual maximum on each count, to put a number on the form. [Counsel] testified that he told [defendant] that "Life" was an unlikely but possible sentence. He also testified that he told [defendant] that if he went to trial he would face life in prison. [Counsel] testified that he could not recall why he wrote "20" as the maximum sentence for carjacking when the actual maximum was "30." He testified that although he could not independently recall correcting this error with [defendant], he believed that he did at some point. [Counsel] testified that he does not recall why Question 10 of the plea form did not include the additional charges in Question 7, however, he testified that

A-0250-18T2

> [defendant] was aware of the extended term of parole
> ineligibility of at least 15-20 years.

The judge lastly recounted that the assistant prosecutor testified he was told defendant wanted to plead guilty because he had become religious and wanted to atone for the murders.

The judge found that trial counsel's testimony about the plea agreement and his discussions with defendant and his parents were credible and that the testimony of defendant and his parents were "incredible as it is directly contradicted by the record." We are obligated to defer to these credibility findings because the judge was able to observe and assess the demeanor of the witnesses. State v. Locurto, 157 N.J. 463, 471-72 (1999).

Moreover, it is not just his credibility determination that produced the judge's conclusion that defendant knowingly and willingly entered his guilty plea. Despite any confusion about the content of the plea form, the judge thoroughly discussed with defendant that to which he was agreeing. In denying post-conviction relief, the judge quoted the assistant prosecutor's description of the plea agreement in open court and in defendant's presence; at that time, the assistant prosecutor said:

> It is the State's understanding that [defendant] will be
> entering a plea of guilty [of] first degree murder of
> Jamal Cooks and Sean Spencer. And in exchange, at

7

the time of the sentencing, the State will be recommending 30 year sentences, that being consecutive to each other . . . . It is the State's understanding that the [d]efense will argue for concurrent sentences. In addition, [defendant] will be entering a plea of guilty [of] first degree carjacking, first degree armed robbery, [and] second degree armed burglary. And, in exchange, the State will be free to speak in the statutory ranges for those crimes, arguing for a consecutive sentence on the top count of the indictment, and concurrent sentences to each other. And, again, [defendant] will be arguing for concurrent sentences on that.

The assistant prosecutor and defense counsel added that the remaining counts of all indictments would be dismissed.

The judge then asked defendant whether he "heard what the [p]rosecutor and your attorney just said." Defendant responded, "[y]es, sir." The judge asked whether what they said was also defendant's understanding of the plea agreement and, again, defendant responded "[y]es, sir." The judge also asked whether defendant had enough time to speak to his attorney and whether it was defendant's desire "to plead guilty today," and defendant responded "[y]es, sir" to both questions. With that, the judge again reviewed the material aspects of the plea agreement with defendant:

THE COURT: Now, with the charges you're pleading guilty to, you understand, on [the murder charges] you face a maximum of 30 years – it's actually life.

. . . .

THE COURT:  You would actually face, the plea form indicates 30 which is what – the sentence, but it's actually a 30 year minimum sentence.  You would face, if you went to trial, up to a life sentence on one of those charges.  You understand that?

[DEFENDANT]:  Yes, sir.

THE COURT:  And that those charges could run – the sentences on those charges, if you were convicted, could run consecutively?

[DEFENDANT]:  Yes, sir.

THE COURT:  You understand on the charges in [the other indictment,] on the carjacking it's another 20 years maximum, the armed robbery of 20 years, and the burglary ten years.  So, in addition to your exposure to two consecutive life sentences you could also potentially face up to another 50 years consecutive to those life sentences.  You understand that?

[DEFENDANT]:  Yes, sir.

. . . .

THE COURT:  [K]nowing everything that we've gone through here today, rights you're giving up, the sentence that you face here which the State is looking for 30 years consecutive to 30 years up to another 20 years consecutive.  Knowing all that, do you want to plead guilty here today?

[DEFENDANT]:  Yes, sir.

[Emphasis added.]

9

In light of all these and other descriptions of the plea agreement and defendant's exposure provided during the course of the proceedings, the judge rejected, as a factual matter, defendant's contention that he did not understand that he faced the possibility of the sentence that he actually received by pleading guilty as agreed.

From all this, and as thoroughly explained in his written decision, the judge rejected defendant's argument that he did not knowingly and voluntarily enter into the plea agreement, rejected any argument that defendant did not knowingly and voluntarily enter his guilty pleas, and denied the PCR petition.

Defendant appeals, arguing through PCR appellate counsel:

> I. THE DEFENDANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL ADVISED HIS CLIENT TO ACCEPT A GUILTY PLEA RESULTING IN A DE FACTO LIFE SENTENCE IN A STATE WITHOUT A DEATH PENALTY.
>
> II. THE DEFENDANT IS ENTITLED TO DE NOVO REVIEW, AND NO DEFERENCE SHOULD BE GIVEN TO THE ERRONEOUS CONCLUSION BELOW.

In a pro se supplemental letter brief, defendant argues in a single point:

> THE DEFENDANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL GROSSLY MISADVISED

DEFENDANT OF THE PENAL AND COLLATERAL CONSEQUENCES OF THE PLEA.

We find no merit in these arguments and affirm.

Indeed, to the extent defendant argues he was misadvised about the exposure he faced either by going to trial or by pleading guilty in accord with the plea agreement, we find insufficient merit to warrant further discussion in a written opinion, R. 2:11-3(e)(2), and affirm substantially for the reasons set forth by Judge John A. Young, Jr., in his written opinion.

We also reject defendant's argument, as we understand it, that the plea agreement was such a bad deal that his counsel should have advised against it because it practically guaranteed defendant would spend the rest of his life in prison. Defendant was nineteen years old when he committed these crimes, so the aggregate seventy-five year prison term, for most of which defendant would be ineligible for parole, would suggest it is likely defendant will die in prison. But that was not a result guaranteed by the plea agreement. The agreement provided an opportunity to significantly reduce defendant's exposure. While defendant knew the State would ask the judge to impose three consecutive terms – one for the murder of Cooks, one for the murder of Spencer, and one for the carjacking – defendant was free to argue for and to attempt to persuade the judge that concurrent terms on all were appropriate, or even that two consecutive terms

11

instead of three were appropriate. With that opportunity, defendant had a chance to greatly reduce the time he would have to spend behind bars before becoming eligible for parole. Had he gone to trial and been convicted – and nowhere in his submissions has defendant contradicted the advice given by trial counsel that there was no likelihood of avoiding conviction[1] – defendant's likely sentence would have been greater and would likely have absolutely guaranteed defendant would never walk out of prison; had he been convicted, as counsel expected, defendant could have been sentenced to consecutive life terms for the murders as well as an additional lengthy consecutive term for the carjacking. It certainly could not have been an enviable choice for defendant but that was a consequence not of anything his attorney did or did not do; it was a consequence of the numerous heinous crimes he committed that fully justified the consecutive terms imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Even now, defendant only argues – even after suggesting we should conduct de novo review – that "[t]he State is entitled to its opinion [but defendant] has no intention of litigating the accuracy of that opinion on the papers in an appellate tribunal, without witnesses taking the oath and the defendant confronting them."

A-0250-18T2