975 A.2d 539 (2009)
408 N.J. Super. 509
STATE of New Jersey, Plaintiff-Respondent,
v.
Brian Thomas BARROW, Defendant-Appellant.
No. A-4334-07T4.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 2009.
Decided July 31, 2009.
*541 Joseph Anthony Manzo, Morristown, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Manzo, Designated Counsel, of counsel and on the brief).
Robyn B. Mitchell argued the cause for respondent (Anne Milgram, Attorney General, attorney; Ms. Mitchell, Deputy Attorney General; of counsel and on the brief).
Before Judges CARCHMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
Following the denial of his motion to suppress, defendant Brian T. Barrow pled guilty to third-degree possession of a controlled dangerous substance (CDS) (cocaine), *542 N.J.S.A. 2C:35-10a(1) (count one), and third-degree possession of CDS (methamphetamine), N.J.S.A. 2C:35-10a(1) (count two). The trial judge merged count two with count one and sentenced defendant pursuant to the plea agreement to a three-year period of probation concurrent to a five-year period of probation he was serving in New York. The judge also imposed the appropriate assessments, penalties and fees.
On appeal, defendant raises the following contentions:
POINT I
BECAUSE THE PROVISIONS OF [N.J.S.A. 39:3-74] DO NOT APPLY TO A PAIR OF MINIATURE BOXING GLOVES THAT ARE HANGING FROM THE REARVIEW MIRROR, THERE WAS NO OBJECTIVELY REASONABLE LEGAL BASIS FOR THE POLICE TO STOP MR. ROSATO'S VEHICLE ON OCTOBER 25, 2005, AND THE EVIDENCE OBTAINED FROM THAT UNLAWFUL STOP MUST BE SUPPRESSED.
A. The otherwise lawful operation of a vehicle with small items hanging from a rearview mirror does not violate the provisions of [N.J.S.A. 39:3-74] that prohibit the operation of a motor vehicle with items upon the front windshield or side windows, and a resulting traffic stop based on this premise is unlawful.

B. There is no reasonable articulable basis to believe that the operation of a motor vehicle with small items hanging from a rearview mirror unduly interferes with the driver's vision, in violation of the third paragraph of [N.J.S.A. 39:3-74], and a resulting traffic stop based on this premise is unlawful.

We reject these contentions and affirm.
The following facts are summarized from the record. On October 21, 2005 at 12:26 a.m., Officer Ted Wittke of the Hazlet Township Police Department was on routine patrol in uniform and in a marked patrol car. While stopped at a red traffic light on Holmdel Road, at its intersection with Route 35, the officer saw a small Acura sports car also stopped at the light facing him in the opposite direction. At some point, Wittke also saw two rounded objects hanging from the Acura's rearview mirror.
Wittke testified that he will stop a vehicle on a case-by-case basis for items hanging from a rearview mirror based on the size of the items, how far they hang down from the rearview mirror, and whether he believed they obstructed the driver's view. In this case, he decided to stop the Acura because the items hanging from the rearview mirror were larger than a Christmas tree air freshener, and were swaying and hanging approximately seven inches from the rearview mirror at the driver's eye level. The officer said that he "observed [the Acura] had items hanging from the [rearview] mirror, which [he] believe[d] obstructed the view of the driver." It was later discovered that the hanging items were boxing gloves measuring 3½ inches high and 3½ inches wide.[1]
Wittke continued that when the light turned green, both vehicles turned onto Route 35 north, with the Acura in front of his patrol car. He activated his overhead lights, but the Acura did not immediately stop. Instead, it coasted to the shoulder, *543 traveled approximately two hundred feet, and entered a parking lot. Wittke became uncomfortable with the time it took the driver to stop. He illuminated the inside of the Acura with a spotlight and saw the passenger, later identified as defendant, leaning forward with his shoulders moving. At this point, the officer suspected that defendant may be either reaching for a weapon or destroying narcotics. He was afraid for his safety, so he radioed for back-up.
After the Acura stopped, Wittke exited his patrol car and cautiously approached the driver's side. When he looked inside the vehicle, he saw defendant sit straight back and stop moving. He then advised the driver that he stopped him because of the items hanging from the rearview mirror. While the driver was taking the items down, the officer saw that defendant moved around and placed his left hand in his left pant pocket. Wittke immediately instructed defendant to remove his hand from the pocket and place his hands where the officer could see them. Defendant complied and told the officer not to worry about him.
Wittke also testified that as a result of defendant's actions, he became increasingly apprehensive and anxious and radioed for additional backup. Officer Michael Duncan and Canine Officer Kevin Geoghan arrived at the scene. Wittke then had defendant exit the vehicle, at which time the officer observed that defendant was "very, very nervous ... his hands were shaking ... [and][h]is speech wasn't very clear." Based on Wittke's experience in prior narcotics arrests, he believed that defendant was concealing narcotics. Thus, he asked Officer Geoghan to conduct a canine "sniff of the vehicle." The dog indicated the presence of narcotics on the passenger side door; however, a search of the passenger area revealed no narcotics.
Wittke then advised defendant "that the dog did alert positively for the smell of narcotics on [defendant's] side of the vehicle." Defendant responded, "I don't understand, I don't do drugs. You go ahead and search me." Defendant then began pulling items from his pocket, including a pack of cigarettes. Wittke's search of the cigarette pack revealed a glassine plastic bag containing a white substance, which based on his training and experience, he believed was cocaine. Wittke advised defendant of his Miranda[2] rights and placed him under arrest. A further search of defendant's person revealed another glycine bag containing "six yellowish pills[,]" which defendant admitted were Ecstasy (methamphetamine).
Wittke also issued the driver a summons for violating N.J.S.A. 39:3-74, based on the items hanging from the rearview mirror. The driver pled guilty and paid a fine.
Defendant filed a motion to suppress, contending that the stop was unlawful because N.J.S.A. 39:3-74 does not prohibit items hanging from a rearview mirror, and because the boxing gloves did not unduly interfere with the driver's vision. Finding Wittke's testimony credible, the motion judge denied the motion, concluding that the officer had a reasonable and articulable suspicion that the driver had committed a motor vehicle violation. The judge reasoned that:
I think that it arguably falls within the definition of this statute. I think that the purpose that windshields be unobstructed that if there is something that is swinging back and forth, it could obstruct or interfere with a driver's vision.

*544 Did it unduly, I mean, that would be a question for the Court trying that traffic offense. But it was enough to bring it to the officer's attention and I find that it was a reasonable decision on his part and it falls within the broad parameters of Paragraph 3 [of N.J.S.A. 39:3-74].
It's true that there is no case in New Jersey that says that this is acceptable and that itit's also true it doesn't outright specify that items can't hang from the rearview mirror. But as I indicated, it can be construed as unduly interfering in the larger, the obstruction that would go toward whether the motorist would be convicted of the offense, whether it would unduly interfere. And as I said, that's not before me. It's whether the officer acted reasonably in stopping the car for that infraction.
Our review of a trial judge's findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999) (citing State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964)). We give great deference to the trial judge's factual findings and will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." Id. at 471, 724 A.2d 234. We also give deference to the trial judge's credibility determinations. Id. at 474, 724 A.2d 234; Johnson, supra, 42 N.J. at 161, 199 A.2d 809. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" and is subject to de novo review. Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (citations omitted); see also Finderne Mgt. Co. v. Barrett, 402 N.J.Super. 546, 573, 955 A.2d 940 (App.Div.2008).
In reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are `supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) (quoting Locurto, supra, 157 N.J. at 474, 724 A.2d 234); see also State v. Alvarez, 238 N.J.Super. 560, 562-64, 570 A.2d 459 (App.Div.1990). We will reverse only if we are convinced that the trial judge's factual findings are "so clearly mistaken `that the interests of justice demand intervention and correction.'" Id. at 244, 927 A.2d 1250 (quoting Johnson, supra, 42 N.J. at 162, 199 A.2d 809.) "In those circumstances solely [we] `appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions.'" Ibid. (quoting Johnson, supra, 42 N.J. at 162, 199 A.2d 809). Applying these standards, we continue our analysis.
Law enforcement officers "may stop motor vehicles where they have a reasonable or articulable suspicion that a motor vehicle violation has occurred." State v. Murphy, 238 N.J.Super. 546, 553, 570 A.2d 451 (App.Div.1990). "Reasonable suspicion" means that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). "Reasonable suspicion" is "less than proof ... by a preponderance of evidence," and "less demanding than that for probable cause," but must be something greater "than an `inchoate or unparticularized suspicion or' `hunch.'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989).
"The fact that the officer does not have the state of mind hypothesized by the reasons which provide the legal justification for the search and seizure *545 [or investigatory stop] does not invalidate the action taken, so long as the circumstances, viewed objectively, support the police conduct." State v. Kennedy, 247 N.J.Super. 21, 28, 588 A.2d 834 (App.Div. 1991) (citing State v. Bruzzese, 94 N.J. 210, 220, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984)); see also Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 97 (1996) (citing United States v. Robinson, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973)). A Fourth Amendment violation is assessed based upon an objective viewing of the officer's actions considering the circumstances confronting him at that time, not his actual state of mind. Maryland v. Macon, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370, 378 (1985) (citing Scott v. United States, 436 U.S. 128, 136, 138, 139 n. 13, 98 S.Ct. 1717, 1722-24, 1724 n. 13, 56 L.Ed.2d 168, 177-79, 178 n. 13 (1978)).
Ultimately, "courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a traffic violation committed in his presence." Kennedy, supra, 247 N.J.Super. at 28, 588 A.2d 834. "The fact that the justification for the stop was pretextual ... [is] irrelevant," Id. at 29, 588 A.2d 834. The State need not prove that the suspected motor vehicle violation has in fact occurred, only that the officer had a reasonable, articulable and objective basis for justifying the stop. Locurto, supra, 157 N.J. at 470, 724 A.2d 234 (citing State v. Williamson, 138 N.J. 302, 304, 650 A.2d 348 (1994)). Investigatory stops are valid in situations where the objective basis for the stop was a minor traffic infraction. Id. at 466, 724 A.2d 234 (finding the stop justified based upon the officer's observations that the defendant was driving "at `a high rate of speed'" in a zone where "[t]he posted speed limit was thirty-five miles per hour[]"); see also State v. Cohen, 347 N.J.Super. 375, 380-81, 790 A.2d 202 (App.Div.2002) (holding that an officer who subjectively believed a vehicle's tinted windows were darkened beyond the acceptable limit had a reasonable and articulable suspicion that a motor vehicle violation had occurred, thereby justifying the stop); State v. Smith, 306 N.J.Super. 370, 380, 703 A.2d 954 (App.Div.1997) (finding the stop justified based upon the officer's observations of the defendant weaving in and out of lanes); Murphy, supra, 238 N.J.Super. at 548-49, 570 A.2d 451 (finding the stop justified where the vehicle's license plate was in a diagonal position, which the officer believed violated N.J.S.A. 39:3-33); State v. Carter, 235 N.J.Super. 232, 237, 561 A.2d 1196 (App. Div.1989) (finding the vehicle stop justified based upon the officer's observations that defendant was tailgating another vehicle).
Here, in denying the motion to suppress, the judge found Wittke's testimony credible, and concluded the officer had a reasonable suspicion that defendant committed a motor vehicle violation justifying the stop. We agree.
N.J.S.A. 39:3-74 provides as follows:
Every motor vehicle having a windshield shall be equipped with at least one device in good working order for cleaning rain, snow or other moisture from the windshield so as to provide clear vision for the driver, and all such devices shall be so constructed and installed as to be operated or controlled by the driver. No person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by *546 statute or by regulations of the commissioner.
No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.
The State concedes that the first two paragraphs of the statute do not apply to items hanging from a rearview mirror. Accordingly, we need not address defendant's contentions regarding those paragraphs and the cases he cites interpreting paragraph two. However, the State posits that Wittke had a reasonable basis for the stop because the third paragraph of N.J.S.A. 39:3-74 applies to the boxing gloves.
Defendant responds that the third paragraph only applies to a vehicle that is "constructed, equipped or loaded" with an offending item. Thus, because the boxing gloves are not part of the vehicle's construction, and do not represent the vehicle's equipment or load, defendant concludes that Wittke lacked a reasonable articulable basis to believe that they violated the statute.
Defendant's argument lacks merit. The third paragraph of N.J.S.A. 39:3-74 applies to vehicles that are "constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides." (Emphasis added.) Among other definitions, "loaded" is defined as "something carried or to be carried at one time or in one trip; burden; cargo[.]" Webster's New World Dictionary, 792 (3d ed. 1988). Accordingly, "loaded" applies to objects that are carried and placed in a vehicle, including items hung from a rearview mirror, such as the boxing gloves. It is unreasonable to conclude that a statute regulating a driver's vision, such as N.J.S.A. 39:3-74, would not include such an object if, in fact, the object unduly interfered with the driver's vision.
The question then is whether Wittke had a reasonable, articulable belief that the boxing gloves "unduly interfered" with the driver's vision. Defendant contends that the officer never articulated how the boxing gloves actually unduly interfered with the driver's vision and, thus, the statute was not satisfied. Defendant is wrong. Wittke testified that he believed the swaying boxing gloves "obstructed" the driver's view. Although N.J.S.A. 39:3-74 does not define "unduly interfere," "unduly" is defined, in part, as "excessively" and "interfere" is defined, in part as "interposed in a way that hinders or impedes." Webster's Third New International Dictionary, 1178, 2492 (1981). "Obstruct" is defined, in part, as "to cut off from sight: shut out." Id. at 1559.
Other states with statutes such as N.J.S.A. 39:3-74 follow one of three distinct approaches to construing obstruction violations which directly refer to the driver's "vision" or "view." These are: (1) statutes that criminalizes the placement of objects that "materially obstruct" the driver's vision (the "materially obstruct" approach);[3] (2) statutes that criminalize the placement of objects that "obstruct" or "obstruct or impair the driver's vision" (the "majority approach");[4] and (3) statutes *547 that criminalize the placement of any object between the driver and the windshield (the "minority approach").
The minority approach, followed primarily in Minnesota, Minn.Stat. § 169.71 (2006), and South Dakota, S.D. Codified Laws § 32-15-6 (Michie 2004), criminalizes any object placed between the driver and the windshield, regardless of its effect on the driver's vision. See also Gerding v. Commissioner of Public Safety, 628 N.W.2d 197 (Minn.App.) (holding that officers have an objective basis for stopping any vehicle with "any objects suspended between the driver and the windshield, other than sun visors and rear vision mirrors" under Minn.Stat. § 169.71, subdivision 1), rev. denied, 2001 Minn. LEXIS 510 (2001). N.J.S.A. 39:3-74 does not flatly prohibit all objects, but only those that unduly interfere with the driver's vision. Thus, the minority approach does not apply here. Only the first two approaches are relevant to our review, and both support the officer's reasonable and articulable suspicion justifying the motor vehicle stop in this case.
The majority approach, followed in Colorado, Colo.Rev.Stat. § 42-4-201(4), and California, Cal. Veh.Code § 26708, criminalizes placement of an object that "obstructs," "impairs," or "reduces" the driver's vision. Obstruction statutes with this language establish a low threshold for stopping motor vehicles, although they do require that the officer credibly testify that he believed the object was in the driver's line of vision.
For example, the Colorado statute states that: "No vehicle shall be operated upon any highway unless the driver's vision through any required glass equipment is normal and unobstructed." Colo.Rev.Stat. § 42-4-201(4) (2006) (emphasis added). In People v. Arias, 159 P.3d 134, 138 (Colo.2007), the court found unjustified a stop of a vehicle with an air freshener hanging from the rearview mirror because the stopping officer did not testify as to how the object obstructed the driver's view, including how the object was displayed or the angle of vision that was obstructed. Id. at 137-38. Thus, the court applied a reasonable, articulable suspicion test in evaluating whether the stop was lawful. Although the State did not meet its burden of proof in Arias, this approach leaves open the possibility that such a stop can be justified with appropriate evidence.
The California statute states: "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle which obstructs or reduces the driver's view through the windshield or side windows." Cal. Veh.Code § 26708(a)(2) (emphasis added). In People v. White, 107 Cal.App.4th 636, 132 Cal. Rptr.2d 371 (2003), a police officer stopped a vehicle for an air freshener hanging from the rear-view mirror. Id. at 373. Because the officer never testified that he believed the air freshener obstructed the driver's view, or to alternative facts that would suggest the driver's view was impeded, the court held that there was no objectively reasonable basis to stop the vehicle. Id. at 375. Again, a reasonable and articulable standard was employed.
The materially obstruct approach, followed in Illinois, 625 ILCS 5/12-503(c), Oklahoma, Okla. Stat. Title 47 § 12-404, and Pennsylvania, 75 Pa. Cons. Stat. § 4524(c), criminalizes objects that "materially obstruct" the driver's vision and utilizes the reasonable and articulable test as well. In United States v. Delfin-Colina, 464 F.3d 392, 400 (3d Cir.2006), the Third Circuit Court of Appeals broadly interpreted the "materially obstruct" phrase in the Pennsylvania statute, which states:

*548 No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.
[75 Pa. Cons.Stat. § 4524(c).]
The Delfin-Colina court found justified a trooper's stop of a vehicle for a pendant hanging low from the rear-view mirror because the officer provided specific, articulable facts that showed he reasonably believed the driver's vision was obstructed. Id. at 394-95, 400. Although the officer mistakenly believed that all objects hung from the rear-view mirror violated the Pennsylvania statute, his testimony articulated objective reasons within the scope of the statute, such as the length the pendant hung from the mirror, its relationship to the driver's view, and its ability to swing back and forth, thereby justifying the stop. Id. at 400.
In comparison, the court in People v. Cole, 369 Ill.App.3d 960, 314 Ill.Dec. 171, 874 N.E.2d 81 (2007), found a motor vehicle stop unjustified because the arresting officer did not testify as to how a hanging object materially obstructed the view of the driver. Id. 314 Ill.Dec. 171, 874 N.E.2d at 88. The officer testified that the object could hinder the driver's vision, but presented no specific articulable facts. Id. 314 Ill.Dec. 171, 874 N.E.2d at 88-90. When asked whether an object could obstruct without materially obstructing, the officer failed to answer the question. Id. 314 Ill.Dec. 171, 874 N.E.2d at 89. Thus, a fine line existed in determining whether the officer stated reasonable and articulable facts as to how an object materially obstructs the driver's vision.
The "unduly interfere" language of N.J.S.A. 39:3-74 falls within both the materially obstructs approach and the majority approach, both of which require the stopping officer to provide articulable facts showing that he or she reasonably believed that an object hanging from a rearview mirror obstructed the driver's view, thus violating the statute. Here, we are satisfied that Wittke's testimony about his observation of the hanging, swaying objects, and his testimony that the objects obstructed the driver's view, passes the reasonable and articulable test to provide the officer ample grounds to perceive that the "unduly interfere" requirement of N.J.S.A. 39:3-74 was violated.
We do not address whether sufficient proof beyond a reasonable doubt existed that the statute was, in fact, violated. That issue is not before us, given the driver's guilty plea. Our holding is confined to the constitutionality of the stop of the automobile in which defendant was a passenger.
Affirmed.
NOTES
[1] Counsel indicated at oral argument that the boxing gloves also had a small Italian flag attached to them.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] See 625 ILCS 5/12-503(c) (West 2006); Okla. Stat. Title 47 § 12-404 (2007); 75 Pa. Cons.Stat. § 4524(c) (2006).
[4] See Ariz.Rev.Stat. § 28-959.01 (2008); Cal. Veh.Code § 26708 (2000); Colo.Rev.Stat. § 42-4-201(4) (2006); Conn. Gen.Stat. § 14-99f (2000); Mich. Comp. Laws § 257.709 (2001); Neb.Rev.Stat. § 60-6,256 (1993); N.Y. Veh. & Traf. Law § 375 (McKinney 2008); Va.Code Ann. § 46.2-1054 (Michie 2003); Wis. Stat. § 346.88 (2007).