**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1649-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL J. FIGUEROA,
a/k/a MICHAEL FIGUEROA,

    Defendant-Appellant.

_____

Argued January 9, 2024 – Decided February 1, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 21-07-0552.

Zachary Gilbert Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Zachary Gilbert Markarian, of counsel and on the briefs).

Tiffany M. Russo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Tiffany M. Russo, on the brief).

PER CURIAM

Following denial of his motion to suppress evidence seized during a motor vehicle stop, defendant Michael J. Figueroa pleaded guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1).  Defendant appeals, claiming the motion judge erred in denying his motion.  Based upon our review of the parties' arguments, the record, and applicable legal principles, we affirm.

I.

During the evening of February 21, 2021, Florham Park Police Department Patrol Officer Christopher Heredia was in his stationary vehicle on Columbia Turnpike when he observed a white van traveling eastbound in the left lane.  Heredia observed the driver, later identified as defendant, "decrease his speed" and the van's "front bumper dip pretty harshly."  When the van passed Heredia, from approximately 150 feet away, he noticed the driver appeared "very rigid" at the wheel and estimated the vehicle was traveling "below the speed limit."  There were few vehicles on the road.  Heredia followed the vehicle upon observing "there was some sort of flapping where the license plate would be," and "[t]here was no illumination on the license plate at the time."  Defendant continued in the left lane at a decreased speed, which caused at least one car to pass in the right lane.

Heredia followed defendant approximately "a mile or two up the road" for "maybe a minute or two." He paced behind the vehicle and ascertained defendant was driving approximately thirty-five miles per hour, which was substantially below the fifty-mile-per-hour speed limit. He determined the speed by "set[ting] the cruise control on [his] vehicle." Once close to the vehicle, Heredia could read the license plate with patrol car headlights illuminating it. Heredia followed defendant to an intersection, where he turned left and then "turned into the McDonald's parking lot." Heredia then activated his emergency lights and mobile vehicle recorder (MVR) and effectuated a motor vehicle stop.

A backup police officer arrived at the scene. As Heredia requested defendant's documents, he smelled burnt marijuana emanating from the vehicle and, in plain view, observed "burnt marijuana cigarettes, or roaches" in an ashtray in "the radio console area." Heredia requested a Sergeant respond to the stop. Defendant relayed he was a security guard coming from Newark and was going to McDonald's. Heredia commented it did not appear defendant was coming from Newark, and defendant clarified he "went the wrong way." After verifying defendant's information, Heredia asked him to exit the vehicle. Since defendant identified himself as a security guard, Heredia asked if he had "any

guns," and defendant responded "Yeah. No." Heredia advised defendant he smelled marijuana coming from the vehicle and asked whether there was "anything else illegal."[1] Defendant volunteered a small bag of marijuana from his pocket and admitted he was smoking marijuana just before the stop. A search under the driver's side seat yielded a loaded nine-millimeter Smith and Wesson handgun.

The officers placed defendant under arrest and provided his Miranda[2] rights. Defendant received motor vehicle summonses for: maintenance of lamps, N.J.S.A. 39:3-66; delaying traffic, N.J.S.A. 39:4-56; and traffic on marked lanes, N.J.S.A. 39:4-88(a).

A Union County grand jury indicted defendant on charges of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); fourth-degree

---

[1] On February 22, 2021, the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56, came into effect, stating, "the odor of cannabis or burnt cannabis" cannot "constitute reasonable articulable suspicion of a crime." N.J.S.A. 2C:35-10c(a). However, at the time defendant's motor vehicle was stopped, "New Jersey courts . . . recognized that the smell of marijuana itself constitute[d] probable cause 'that a criminal offense had been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013) (quoting State v. Nishina, 175 N.J. 502, 516-17 (2003)).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

unlawful possession of a prohibited weapon, N.J.S.A. 2C:39-3(j); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

Defendant moved to suppress the evidence challenging the motor vehicle stop. Defendant argued Heredia did not have a reasonable articulable suspicion to initiate the stop; therefore, the subsequent search and seizure was unlawful.

At a one-day suppression hearing, Heredia and defendant testified. After argument, the motion judge issued an oral decision and entered an order denying the suppression motion, finding the State demonstrated a reasonable articulable suspicion to stop defendant's vehicle. The judge also denied defendant's reconsideration motion. Thereafter, in accordance with a plea agreement, defendant pleaded guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and was sentenced to forty-two months with a forty-two-month period of parole ineligibility, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).

On appeal defendant raises the following points:

> POINT I
>
> THE MOTOR VEHICLE CODE UNAMBIGOUSLY PERMITTED FIGUEROA TO DRIVE IN THE LEFT LANE IN PREPARATION FOR A LEFT TURN AND ILLUMINATE HIS LICENSE PLATE WITH TWO WORKING TAIL LAMPS AND ONE LAMP ABOVE HIS LICENSE PLATE.

A-1649-22

A. N.J.S.A 39:4-88[(a)] and 39:4-123 Authorized Figueroa's Driving in the Left Lane in Preparation for a Left Turn.

B. N.J.S.A 39:3-61 Authorized Figueroa to Drive With Two Working Taillights and One Separate Lamp Illuminating His License Plate.

II.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017). It is well established, "[l]aw enforcement officers 'may stop motor vehicles where they have a reasonable or articulable suspicion that a motor vehicle violation has occurred.'" State v. Barrow, 408 N.J. Super. 509, 517 (App. Div. 2009) (quoting State v. Murphy, 238 N.J. Super. 546, 553 (App. Div. 1990)). "To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion." State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)). "To justify

6

a stop, an 'officer must have a reasonable and articulable suspicion that the driver . . . is committing a motor-vehicle violation' or some other offense." State v. Carter, 247 N.J. 488, 524 (2021) (alteration in original) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)). The State bears the burden of proving by a preponderance of the evidence that a motor vehicle stop is supported by a reasonable and articulable suspicion the driver is committing a motor vehicle violation. See State v. Atwood, 232 N.J. 433, 446 (2018).

In determining whether a reasonable and articulable suspicion exists, the judge must consider "the totality of the circumstances—the whole picture." State v. Gamble, 218 N.J. 412, 431 (2014). Further, "[t]he State need not prove that the suspected motor vehicle violation has in fact occurred." Barrow, 408 N.J. Super. at 518 (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Rather, "[c]onstitutional precedent requires only reasonableness on the part of the police, not legal perfection. Therefore, the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense." State v. Williamson, 138 N.J. 302, 304 (1994).

Our review of the trial court's ruling on a motion to suppress evidence is limited. We "must defer to the factual findings of the trial court on a motion to suppress so long as its findings are supported by sufficient credible evidence in

the record." State v. Erazo, 254 N.J. 277, 297 (2023). We "defer[] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "Our deference to a trial court's findings of fact is not limited only to those based on live testimony presented at an evidentiary hearing," as we also give deference to the "court's fact finding based on its review of video and documentary evidence." State v. Nieves, 476 N.J. Super. 405, 418-19 (App. Div. 2023). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Nelson, 237 N.J. 540, 551-52 (2019) (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). By contrast, we review de novo "a trial court's interpretation of the law" and the legal "consequences that flow from established facts." Gamble, 218 N.J. at 425.

### III.

Defendant's contention that the judge erroneously found Heredia validly stopped defendant's vehicle, based on a reasonable articulable suspicion defendant committed motor vehicle violations, is without merit. Sufficient

credible evidence in the record supports the judge's finding that Heredia lawfully stopped defendant for delaying traffic and improper license plate illumination.

We reject defendant's argument the judge erred in finding a reasonable articulable suspicion existed under N.J.S.A. 39:4-56, delaying traffic. The statute provides: "No person shall drive or conduct a vehicle in such condition, so constructed or so loaded, as to be likely to cause delay in traffic." N.J.S.A. 39:4-56. As the title and the plain language of the statute clearly indicate, the statute provides a person shall not drive a vehicle in a manner to cause a delay. "If the text of a law is clear, the 'court's task is complete.'" Carter, 247 N.J. at 513 (quoting State v. Lopez-Carrera, 245 N.J. 596, 613 (2021)).

The judge found Heredia had lawfully stopped defendant's vehicle because "[h]e reasonably believed that defendant violated [N.J.S.A.] 39:4-56." Specifically, the judge found Heredia's observations credible that the van's "bumper dip[ped] harshly," and at least one vehicle in the left lane "had to move into the right lane to pass . . . defendant" because he was estimated to be traveling at least "[fifteen] miles per hour below the speed limit" for "approximately one mile." We are unpersuaded by defendant's arguments that N.J.S.A. 39:4-88(a) and N.J.S.A. 39:4-123 precluded Heredia from reasonably perceiving his reduced driving speed for approximately a mile was a delaying

traffic violation. "Based on the facts alleged in the testimony," the judge concluded Heredia was "credible and that he testified truthfully to the best of his knowledge." The judge's finding that Heredia had a reasonable articulable suspicion is supported by sufficient credible evidence in the record.

Further, defendant's contention that the State conceded N.J.S.A. 39:4-97.1, which states "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law," would have been a more appropriate summons is not dispositive.

We reject defendant's argument that the judge "did not rule on whether [the] police had a reasonable suspicion" defendant violated N.J.S.A. 39:3-66 because the record demonstrates otherwise. N.J.S.A. 39:3-66 requires "all lamps, reflectors, and other illuminating devices . . . be kept clean and in good working order." Relatedly, N.J.S.A. 39:3-61(a) requires a motor vehicle "be equipped with adequate license plate illumination." Pursuant to N.J.S.A. 39:3-61(k), an illuminated license plate "will be deemed . . . adequate when either a tail lamp or a separate lamp is so constructed and placed as to illuminate with a white light the rear license plate on a vehicle and render it clearly legible from a distance of 50 feet to the rear." (Emphasis added). In his findings, the judge

elucidated Heredia testified to observing "the rear license plate bulbs not functioning," and that the license plate was flapping. The judge further found Heredia credible on cross-examination when Heredia acknowledged in viewing the MVR recording that it appeared only one license plate light bulb was not working.

Heredia testified he "had to be very close to the vehicle in order to read [the] license plate" and was only able to see the plate when he was approximately ten feet away because the patrol vehicle's "headlights were illuminating the license plate." The judge noted Heredia stated to defendant "your license plate lamps [wer]en't illuminating," and inquired if he knew "they [were] not working." In reviewing the testimony, the judge noted defendant's testimony that the admitted photographs taken after his arrest depicted an operable "left light bulb," and that the "license plate light [bulb] above the last two characters . . . [wa]s not illuminated."

In finding a reasonable articulable suspicion for the stop based on the suspected license plate illumination violation, the judge correctly rejected defendant's argument that suppression was warranted because Heredia committed a mistake of law in interpreting the unambiguous provisions in N.J.S.A. 39:3-66. The judge found "[i]n this case[,] clearly the officer testified

11

that the license plate was not illuminated for him to see," and there was no "mistake of law." In finding the facts distinguishable from State v. Sutherland, 231 N.J. 429 (2018), the judge additionally noted the different statutory applications. He observed Sutherland involved vehicle "lighting," but "[wa]s certainly different than a finding of a violation of this statute." The judge correctly observed the determination of whether the testimony "would support the finding of fact . . . that there was a violation of [N.J.S.A.] 39:3-66 . . . [wa]s not before [the c]ourt." Indeed, we observe the long-standing principle that the State does not have the burden to prove the suspected violation occurred at the suppression hearing. See Barrow, 408 N.J. Super. at 518.

We defer to the judge's finding that Heredia was "a credible witness" based on his responsiveness in "answer[ing] questions," "not want[ing] to estimate," and "calm" demeanor. See Nyema, 249 N.J. at 526. Sufficient credible evidence in the record supports the judge's conclusion that "the totality of the circumstances led to the reasonable suspicion of the motor vehicle stop." We discern no reason to disturb the judge's well-reasoned decision.

Any arguments presented by defendant we have not addressed are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1649-22